# THE COMMERCIAL INSURANCE COMPANY

## *v.*

# HENRY IVES *et al.*

1. INSURANCE — *of mistakes or omissions in the application, when made by the agent of the company — estoppel.* Where an insurance company issues a policy, relying entirely on its own knowledge of the facts connected with the property insured, and dispensing with any information from the assured, the agent of the company having himself, without any communication at the time with the assured, made out the application and signed the name of the assured to it, the company will be precluded from denying the truth of any statement in the application, or setting up any mistake or omission in the same.

2. Where matters set up in avoidance of a policy, are acts and omissions of the company's agents, which took place before the delivery of the policy, and would render it invalid, by its terms, at the time of delivery, they can not avail the company in their defense. The issuing of such a policy as and for a valid policy, and taking the premium for it as such, is a representation that it is a valid policy, and the company would be estopped by law to say or show the contrary. It is an estoppel *in pais.*

3. SAME — *who will be considered an agent of the company.* A property owner applied to an insurance agent for additional insurance. This agent wrote to another insurance agent, who resided at another place, on the subject. The latter replied that he might make out an application, and a correct diagram and full description of the property, and he would forward it to a company of which he was agent, for their approval or rejection. The first agent thereupon wrote the application and signed the name of the applicant to it without any communication with the latter at that time, and sent it to the other agent, who forwarded it to his company. A policy was returned to the agent who forwarded the application to the company, and was sent by him to the agent who first solicited the insurance, who delivered it to the assured, and received the premium. This soliciting agent had previously procured insurance on the same property, and was familiar with it : *Held,* although the agent to whom the application was originally made, and who wrote the application, was not employed as their agent by the company who issued the policy, yet he must be regarded as acting as their agent in this particular case, and not as the agent of the assured.

4. The policy provided " that any person other than the assured, who may have procured this insurance to be taken by this company, shall be deemed

the agent of the assured named in this policy, and not of this company, under any circumstances whatever, or in any transaction relating to this insurance." This clause was held not to have the effect to change the fact, that the agent who originally furnished the application was not the agent of the assured.

5. Moreover, that clause was not intended to apply to a case where the company itself took the insurance, without the procurement of another, as was considered to be the case in this instance.

APPEAL from the Circuit Court of Peoria county; the Hon. SABIN D. PUTERBAUGH, Judge, presiding.

The opinion states the case.

Mr. O. B. SANSUM, for the appellants.

Messrs. INGERSOLL & McCUNE, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

It is unnecessary to consume time and space in examining in detail the numerous assignments of error on this record, one among them being the refusal of sixteen instructions, and another the giving of eight, as the determining of two or three questions arising under three several stipulations in the policy of insurance sued on, will substantially dispose of the merits of them all.

These stipulations, in printed words upon the face of the policy, are as follows:

" Applications for insurance, whether written or verbal, must contain or convey a true description and valuation of the property insured, and such description and valuation shall be deemed a part of this contract, and a perpetual warranty on the part of the assured.   *   *   *   or, if the assured, or any other person interested, shall have already procured, or shall hereafter procure, any other policy of insurance, or instrument purporting to be a policy of insurance against fire on the prop-

erty, or any part thereof, hereby insured (whether such instrument be valid or binding as contract of insurance upon the parties thereto, or either of them, or not), without the consent of this company written hereon ;   *   *   *   then, in each and every such case, this policy shall be void and of no effect. *   *   *

"If the premises herein insured be held upon lease, or upon leased ground, or if the interest of the assured be equitable, or if it be not one of absolute ownership in fee simple, without incumbrance by mortgage or otherwise, it shall be incumbent upon the assured, whether inquired of or not, so to state the same to this company in writing, giving the true title of the assured and the extent of the interest insured, and the same be so expressed in this policy in *writing*, otherwise this policy shall be void and of no effect ; and this policy shall not be construed to protect the interest of any person not named herein as the assured.   Goods held on storage must be separately and specifically insured.   *   *   *

"It is a part of this contract, that any person other than the assured, who may have procured this insurance to be taken by this company, shall be deemed to be the agent of the assured named in this policy, and not of this company under any circumstances whatever, or in any transaction relating to this insurance.   *   *   *   and no part of this contract can be waived except in writing, signed by the secretary of this company."

The application stated the title, " Fee," the other insurance then on the property, " Peoria Fire & Marine, $3,000, and The Enterprise of Cincinnati, $5,000 on mill and machinery."

The title was a bond for a deed.   The appellees had, at the date of the application, two other policies of insurance, one for $3,000 by the Farmers and Merchants' Insurance Company, and one for $5,000 by the La Salle County Mutual Insurance Company, the last being a bankrupt and worthless concern, and its policy expired May 7, 1868, four days before the fire.   All the above named insurance, except the last named $5,000, had been procured by J. P. Holmes, who resided at El Paso, where the

property burned was situate, and there acted as the agent of the Farmers and Merchants' Insurance Company.

The policy in suit recites that appellant insures appellees in the sum of $3,000; and in writing upon its face reads : " On their frame steam flour mill building, machinery, and warehouse adjoining, situate in the town of El Paso, Woodford county, Ill., reference being had to their application and survey, No. 14,510, on file in the office of the company in Chicago, for a more particular description, and is a part of this policy and is a warranty by the assured. $8,000 other insurance permitted."

It is now contended by the counsel for the appellant, that this policy is null and void, as provided by its terms ; because the consent of the company to the prior insurance was not written upon the policy; because the interest in the property insured was equitable and the assured did not so state the same in writing, giving his true title and extent of interest, and the same was not so expressed in the policy in writing, and because of the falsity of statement in the application.

From the evidence it appears that Holmes was familiar with this property ; the appellees had applied to him, an insurance agent, to get $6,000 more insurance on it; he writes to one Folsom at Bloomington, general agent of the Bloomington Insurance Company, and local agent for appellant, who issued policies himself in ordinary cases, but not on special hazards, as this was. He writes back to Holmes: " You may make out an application for Ives Bros., in the Commercial, and give a correct diagram and full description of the mill, etc., also how the furnace is situated, and I will forward to the company for approval or rejection." Holmes himself, without any communication with appellees, wrote the application, signed the name of H. & E. Ives to it, and sent it to Folsom; he forwarded it to appellant at Chicago, which thereupon made the policy in suit, forwarded it to Folsom, who in turn inclosed it in a letter to Holmes, saying: " Enclosed you will find policy in Commercial Insurance Company which you will deliver to Messrs. H. &

406    COMMERCIAL INSURANCE Co. *v.* IVES *et al.*    [Sept. T.,

Opinion of the Court.

E. Ives and collect premium and report to me. In making charges for commissions, you must fix it so I won't lose any thing," etc.

Holmes drew a diagram on the back of the application, and made the following indorsement upon the application under the head of "Remarks of agent."

" I can not give any better description of the premises than .I have done, as I am not very skillful at platting. However, .this is all that is required of me by other companies, having placed the entire amount on it. I consider it a very good risk of the class to which it belongs. The owners are our best men, careful and reliable.

"J. P. HOLMES, *Solicitor.*"

Holmes delivered the policy to the appellees; they paid to him the premium, $180, and he forwarded it to Folsom. Holmes had obtained in the same manner, through Folsom, a previous policy of insurance from appellant.

The company, then, issued this policy, relying entirely upon its knowledge of the facts, and dispensed with any information from the assured. In such case, it is precluded from denying the truth of any statement in the application, or setting up any mistake or omission in the same. *Atlantic Insurance Co.* v. *Wright,* 22 Ill. 462.

In reference to a similar provision in a policy, which made it null and void unless the consent of the company to other insurance should be in writing and indorsed on the policy, this court, in *N. E. Fire and M. Ins. Co.* v. *Schettler,* 38 Ill. 168, say.: " The agent of plaintiff states the assured mentioned two offices in which he had effected insurance, but the agent did not enter them in writing on the policy, as he was bound to do. For this neglect, the assured should not suffer."

Any thing required by the policy to be done by the appellees, after it was delivered to them, to make it available, they would be held to perform.

But the matters set up in avoidance of this policy are acts

and omissions, and those too of the company's agents, which had taken place before the policy was delivered, which, by its terms, would have made it an invalid policy at the time it was delivered. Now, the issuing of this policy, under the circumstances of this case, as and for a valid policy, and taking the premium for it as such, was a representation that the policy was then valid; and the company are estopped by law to say or show the contrary. It is an estoppel *in pais*.

When a party, either by his declaration or conduct, has induced a third person to act in a particular manner, he will not afterward be permitted to deny the truth of the admission, if the consequence would be to work an injury to such third person.

This is a clear rule of law.

Declaring a note to be good to one about to purchase it, or standing by in silence when it is transferred for consideration, is an estoppel *in pais* against a debtor. *Watson's Executors* v. *Mc Laren*, 19 Wend. 557.

No declaration by words could have been a stronger representation that this was a valid policy, than the conduct of the appellant.

But it is urged that the last stipulation above recited makes Holmes appellees' agent — that they so agreed.

There is no magic power residing in the words of that stipulation to transmute the real into the unreal. A device of mere words can not, in a case like this, be imposed upon the view of a court of justice in the place of an actuality of fact, and make this company and its agents the agents of the appellees, and their doings the doings of the appellees.

But the general language of that provision was not framed in view of any such case as this. It contemplates the case where some other person has procured the insurance to be taken by the company, upon whose information or conduct it depended. Here, the company of itself alone took this insurance; no one else procured them to take it.

Believing these views essentially dispose of all the material

questions presented to our consideration, and show the propriety of the action of the court below, in giving and refusing instructions, and overruling the motion for a new trial, the judgment of the court below is affirmed.

*Judgment affirmed.*

Subsequently to the announcement of the foregoing opinion, a petition for a rehearing was filed by appellant. The application was denied, and thereupon the following additional opinion filed:

Per CURIAM: A petition for a rehearing in this case has been presented.

The case was before presented and considered, chiefly upon matters of law arising upon the instructions involving the effect of certain provisions in the policy, requiring certain things to be expressed in writing, upon it; and whether the language of the policy did not make Holmes the agent of the assured, without regard to the actual fact, so that his application was their application, and any false statement in it vitiated the policy. This application for a rehearing is urged mainly on the grounds that Holmes was, in fact, the agent of the assured, and that the assured wrongfully concealed from Holmes, the insecure condition of the furnace, which tended greatly to increase the risk.

This involves only the finding of the jury upon the facts, and presents the question, whether the finding of the jury, in these respects, against the company, was so manifestly against the evidence, as to call upon us to set aside their verdict.

Had Holmes really been employed by the assured as their agent, to get these premises insured for them, we do not say that he would not have had an implied authority to sign their names to the customary application, as being a necessary and proper means for effecting the insurance; but here, the testimony was, that Holmes was in the insurance business at El Paso; we suppose this to import that he was the agent of some one or more insurance companies to act for them in making

insurance; and not that he was the agent of applicants for insurance, to obtain insurance for them. And it is not to be admitted, that when an application is made to such a representative of an insurance company for insurance, he is thereby constituted an agent of the applicant, to make an application for him in writing, and sign his name to it, whereby the assured can be charged as upon an express warranty of the truth of the statements contained in it. It was for the jury to say, whether the appellees did not rather apply to Holmes, as an insurance agent, to be insured, than to act for them, as their agent, to get them insured.

Holmes, it is true, testifies that he had made several applications for Ives before; but there is no evidence that any one of them was with the sanction or knowledge of Ives. He further testified, that he made the application, in the present case, at his own instance; that he drew the diagram on the back of the application, and the Iveses had nothing to do with it, and that he was not agent of the appellees.

There was evidence tending to show, that Holmes, in making out the application and diagram, etc., was acting for and at the direction of Folsom, an admitted agent of the appellants at Bloomington. Without attempting to review the evidence in detail, we will say, that we have carefully re-examined all the testimony, and find there is so much tending to show that Holmes was not the agent of the appellees, that we see no reason to disturb the finding of the jury in that respect, as being contrary to the evidence.

Upon the point of concealment from Holmes, of a matter material to the risk, it appears that Henry Ives, in pursuance of a provision in the policy, submitted to an examination under oath before a notary public in Chicago, and then stated, that he supposed the mill took fire from the sparks from the furnace through a crack in the furnace wall, the reason of which supposition was, that the fire was first discovered immediately over the boiler furnace, and he further said, he had known of a crack there on the outside for a month, perhaps longer, but he

did not know that it extended through until after the fire. But on the trial, Ives testified, that, at the time of his examination in Chicago, he supposed, from the appearance of the crack after the fire, that it extended clear through the wall, but that after said examination, when they got ready to rebuild, the furnace wall was taken down, and it was then found that the crack was only in the outside of the wall; that there was no crack through the inside wall; and that there were eight inches of solid brick work between the furnace and the crack spoken of in his examination; that he never had any knowledge or suspicion of that crack until after the fire; that for a while before the fire he had seen another crack at the back of the wall, and had it repaired; that it was filled up with brick and mortar; that before he made application to Holmes, for insurance, he knew of no defect in the furnace, except this on the outside, and that he did not consider it of any importance. This statement and testimony of Ives was all the evidence upon the point. This testimony on the trial tended, in a material degree, to qualify the former statement made on the examination. It was especially for the jury to judge of the force and effect of the whole evidence when taken together; and we can see no cause for interference with their finding on this question of fact.

The rehearing must be refused.

*Rehearing refused.*