## South Bend Toy Manufacturing Co. v. Dakota Fire & Marine Insurance Co.

1. A stipulation in an insurance policy that any person other than the insured or the duly authorized agent of the company who may have procured the insurance to be taken shall be deemed the agent of the insured, will not be binding upon the insured as to any act prior to the delivery of the policy, unless notice has been given the insured before the negotiations for the policy are completed that such a stipulation will be inserted therein.

2. When the plaintiff—a corporation doing business at South Bend, Ind.,—is notified by H. Bros., local insurance agents of that city, who have attended to the business of placing insurance for the plaintiff, that a policy is about to expire, and the insured consents to a renewal of the policy, the plaintiff does not thereby make H. Bros. its agents to obtain for it an insurance policy, where they, instead of placing the insurance in some company represented by them, apply to a firm of insurance agents in another state for such insurance.

3. R. & Co., insurance agents at Newport, Ky., were applied to by H. Bros., insurance agents at South Bend, Ind., for a policy on the property of the plaintiff, and the last name firm, having no company represented by them in which to place the insurance, applied to P., general agent of the defendant at New Orleans, for a policy, and forwarded to him a written application, signed by them in their firm name of R. & Co., in which are contained certain representations which by the terms of the policy, are made warranties, and which representations were untrue as to two material facts therein stated. *Held*, that R. & Co. were not the agent of plaintiff in procuring said policy, and that they were not authorized to make an application in writing binding the plaintiff to the truth of such representations.

4. P., as the general agent of the defendant, issued to the plaintiff a policy upon the application of R. & Co., and signed by them in their firm name, without requiring any written application signed by the plaintiff or its authorized agent. *Held*, that defendant was bound by such policy, although the representations in the application were not binding upon the plaintiff.

5. When an application is signed by R. & Co., insurance agents, in their firm name, the application is what it purports to be,—the application of R. & Co.; and, as they did not assume to be the agents of plaintiff in making the application, P., the general agent of the company, had no right to presume they were acting as agents of the plaintiff in making such application, or authorized by it to make an application binding upon the plaintiff, and a policy issued by him will be binding upon the defendant, and the representations in the application will be disregarded.

6.  A map of the premises insured, offered in evidence, proven to have been the printing of H. Bros., insurance agents at South Bend, Ind., and received by the secretary of defendant company at Mitchell, Dak., with the application for insurance from P., its New Orleans agent, was properly excluded by the court.

7.  H. Bros., insurance agents, who had been placing insurance for the plaintiff, applied to R. & Co., insurance agents in another state, for a policy for plaintiff, and the last named firm, having no company represented by them willing to take the insurance, applied to P., a general agent of the defendant at New Orleans, who issued the policy in controversy in this action, forwarded it to R. & Co., who forwarded it to H. Bros., who delivered the policy to plaintiff, collected the premium, and after deducting their commission, remitted balance to R. & Co., who credited it to P., with whom that firm interchanged insurance business, and with whom they had an open account. *Held*, that P., by forwarding the policy, with authorty to collect premium, to R. & Co., made R. & Co. the agents of the defendant for that purpose, and that the premium was in effect paid to the company under the terms of the policy.

(Syllabus by the Court.   Opinion filed March 19, 1891.)

Appeal from circuit court, Davison county.   Hon. D. HANEY, Judge.

The facts so far as material are fully stated in the opinion.

*Dillon & Preston*, for appellant.

A principal cannot claim the benefits of a bargain made by his agent without adopting the instrumentalities by which it was consummated.   Ellwell v. Chamberlain, 31 N. Y. 611. It was error for the court to withdraw the application for insurance from the consideration of the jury, as it was for the jury to say in the light of all the circumstances surrounding the application, whose agents were Henderson Bros. and Runk & Co. §§ 3997, 3979, Comp. Laws.   Lovell v. Williams, 125 Mass. 439;  Houghton v. Maurer, 55 Mich. 323;  New England Co. v. Addison, 15 Neb. 335; Wilcox v. Railroad, 24 Minn. 269; Griggs v. Selden, 58 Vt. 561; Walsh v. Ins. Co. 73 N. Y. 5; Robert v. Peppel, 21 N. W. 319;  Thompson on Trials, § 1037; Williams v. Railroad, 14 N. W. 97; Miars v. Railroad, 21 N. W. 5; Railroad v. Stout, 17 Wall, 663.

An insurance broker is the agent of the party by whom he is employed to effect the insurance and not of the companies in

which the insurance may be placed. Ins. Co. v. Minnequa Springs Co. 11 Ins. Law J. 892; Peoria Sugar Co. v. Ins. Co. 14 Id. 323; Standard Oil Co. v. Ins. Co. 64 N. Y. 85; Mellen v. Ins. Co. 17 N. Y. 609; Draper v. Ins. Co. 2 Allen, 569; Ins. Co. v. Reginalds, 36 Mich. 502; Ins. Co. v. Weary, 4 Bradw. 74; Ins. Co. v. Mann, Id. 485; Lange v. Ins. Co. 3 Mo. App. 591; Ins. Co. v. Corlin, 58 Md. 336. The application for insurance therefor being signed by the agent of the insured is binding upon it and the insured is chargeable with the truth of the representations therein contained. Wood on Fire Ins. p. 291.

By the terms of the policy the stipulations in the application for insurance became warranties on the part of the insured, and no matter how immaterial the facts warranted may be the insured should be held strictly to its contract. Wood on Ins. pp. 272, 284, 313; Jeffries v. Ins. Co. 22 Wall. 47; Ins. Co. v. France, 91 U. S. 510; Ripley v. Ins. Co., 30 N. Y. 136; Byers v. Ins. Co., 35 O. St., 606; Davenport v. Ins. Co., 6 Cush., 340; Brown v. Ins. Co. 18 N. Y. 385; Bartian v. Ins. Co. 67 N. Y. 595.

The policy in suit provided that "the company shall not be liable until the actual payment of the premium," and it was error for the court to charge the jury that if the amount of the premium, less the commissions thereon usual in the insurance business, reached any agent of the defendant authorized to receive the same by means of drafts transmitted in the usual course of business, or by the offset of mutual accounts current in the usual course of business, the premium was received by the defendant. Ins. Co. v. Willets, 24 Mich. 267; Grace v. Ins. Co., 109 U. S. 278.

*A. E. Hitchcock,* for respondent.

The form of the application for insurance excluded by the lower court was not such as to entitle it to recognition as a part of the policy. § 4157 Comp. Laws; Vilas v. Ins. Co., 72 N. Y. 590.

The relation of the firm of Runk & Co. to Ben Phelon was that of sub-agent and in procuring the policy and receiving the premium they were the agents of defendant. The application for insurance being made by them had no binding effect upon

plaintiff. This relation of Runk & Co. was not changed by the clause in the policy which provides: "It is a part of this contract that any person other than the assured, or the duly authorized agent of this company, who may have procured this insurance to be taken by this company shall be deemed to be the agent of the assured named in this policy, and not of this company under any circumstances whatever, or in any transaction relating to this insurance." 31 Cent. Law Jour. 246; Gans v. Ins. Co., 43 Wis. 108; Gates v. Ins. Co., 10 Hun. 489; Sprague v. Holland Purchase Co., 69 N. 128; Boetcher v. Ins. Co., 47 Iowa 253; Planters Ins. Co., 55 Miss. 479; Partridge v. Ins. Co., 17 Hun. 95; White v. Ins. Co., 76 N. Y. 415; Sullivan v. Ins. Co. 34 Kan. 170; Kausal v. Mut. Co., 31 Minn. 17; Ins. Co. v. Mahone, 56 Miss. 180; Eilenberger v. Ins. Co., 89 Pa. St. 464; Bassall v. Ins. Co., 2 Hughes, 531.

The doctrine contended for by appellant that an insurance broker is the agent of the party by whom he is employed to effect insurance and not of the companies in which such insurance may be placed, is incorrect. Lyon v. Ins. Co. of Dakota, Dak. (not reported); May v. Ins. Co., 27 Fed. 260; Ins. Co. v. Wilkinson, 13 Wall. 222; Ins. Co. v. Ives, 56 Ill. 402; Ins. Co. v. Sammons, 110 Ill. 167; Ins. Co. v. Ward, 90 Ill. 545; Muller v. Ins. Co. 4 At. 817.

The evidence upon the question of agency being undisputed the court had the power to withdraw it from the jury. Bush v. Railroad, 3 Dak. 444; Territory v. Stone, 2 Dak. 171; Commissioners v. Clark, 94 U. S. 278; Upton v. Fribilcock, 91 U. S. 45; Herbert v. Butler, 7 Otto, 278.

Payments of premiums to an officer or duly authorized agent of an insurance company in any of the ordinary modes adopted in business is binding upon the company. Wood on Ins. p. 74; Ins. Co. v. Carter, 11 At. 106; Pittsburg Boat Yard Co. v. Ins. Co. 11 At. 801.

CORSON, P. J. Action on an insurance policy. Complaint is in the usual form. The answer alleges, in substance. (1) That plaintiff did not at any time pay the premium to the de-

fendant or to any person authorized to receive same for the defendent : (2) that the plaintiff made a certain application for insurance, which application was, by the terms of the policy, made a part of the contract; and that the plaintiff in said application warranted that the property was not incumbered, and also that no painting or varnishing was done in the main building, when in truth and in fact there was an existing mortgage of $2,200 upon the said property, and painting and varnishing were in fact carried on and done in the main building; and (3) that prior to the destruction of said property by fire the defendant, under the terms of said policy, canceled said insurance contract. The facts, briefly stated, are that the defendant is an insurance company having its principal office in the city of Mitchell, S. D. That the plaintiff is engaged in business in South Bend, Ind. That at the time the policy in controversy was issued, Ben Phelon, of New Orleans, was the duly appointed agent of defendant in that city, and issued the policy in controversy. That in October, 1887, a policy held by plaintiff in some company being about to expire, the firm of Henderson Bros., insurance agents, who were residents of and engaged in business in South Bend, and who had succeeded to the business of one A. B. Clifford, who had previously attended to procuring insurance for the plaintiff, notified plaintiff of the expiration of said policy, and was informed by plaintiff by its secretary and treasurer that it would renew the policy. That thereupon Henderson Bros. wrote Runk & Co., who were insurance agents at Newport, Ky., and who had done business for said Clifford, and continued to do insurance business for Henderson Bros., and who at the time were carrying the insurance for plaintiff about expiring, to renew the policy. That Runk & Co., having no company in which they could or desired to place this insurance at that time, made application to Ben Phelon, the general agent of defendant at New Orleans, with whom they (Runk & Co.) exchanged business, for a policy, which application is as follows: (Exhibit D:)

Insurance Agency of Runk & Co. Insurance is wanted by

South Bend Toy Mf'g Co., of South Bend, Ind., for one year.

| Company. | Commencement. | Amount. | Rate. | Premium. |
|----------|---------------|---------|-------|----------|
| Ben Phelon. "Western." | Sept. 15, '87. | $1,000.. | "4" | "40" |

[The words "Ben Phelon" and "Western" were written in lead pencil.]

| Occupancy. | Exposure within 100 feet. |
|------------|---------------------------|
| Manufacture of Toys. | Detached. |

"General Remarks: No painting or varnishing in the main building. This is done in brick building separate from main building. Good fire protection. Hand grenades, hose, hydrants, etc. Watchman kept. Risk is kept very clean. All waste disposed of daily. Rate is board. Please send policy at once and oblige. RUNK & CO.

"General information: Is there any fact connected with this risk or neighborhood affecting the moral hazard? No. What is the present cash value of the property? 20 to 25,000. Is it mortgaged or otherwise encumbered? No. What additional insurance? ¾ value. Are the policies concurrent? Yes. Does the insured keep books of account? Yes, Companies on: Miss. Valley; Ills. Mut'l; Indiana; Citizens; Ohio Valley; Mt. City; Royal; Pierre; Germ. Am.; Hope; Reliance, Capital; Ins. Co. Dak.; Vanderbilt," etc.

That upon this application Ben Phelon issued the policy in suit, and forwarded it to Runk & Co. at Newport, who forwarded it to Henderson Bros. at South Bend, who delivered it to plaintiff, and collected the premium, and forwarded it to Runk & Co., less commissions, and they, Runk & Co., credited it to Ben Phelon, with whom they had an account.

On the trial, two material facts stated in the application, and claimed by defendant as warranties, were shown to be untrue,

namely, that there was no mortgage on the property, and that no painting or varnishing was carried on in the main building. The policy contained the following stipulations: "(1) This company shall not be liable until the actual payment of the premium. (2) The application, survey, plan, or description of the property herein insured, referred to in this policy, shall be considered a part of this policy, and a warranty by the assured; and if the assured, in a written or verbal application, makes any erroneous representations, or omits to make known any fact pertaining to the risk, * * * then this policy shall be void. (3) This policy may be canceled at any time at the request of the assured, the company retaining customary monthly short rates for the time the policy has been in force. It may also be canceled at any time by the company, on giving written or verbal notice to that effect to the assured, or legal holder of the policy, who shall be entitled to the return of a ratable proportion of the premium for the unexpired term of the policy, upon the return of the same to the home office of the company." "(5) Of brokers and agents. It is a part of this contract that any person other than the assured or the duly authorized agent of this company who may have procured this insurance to be taken by this company shall be deemed to be the agent of the assured named in this policy, and not of this company under any circumstances whatever, or in any trans-action relating to this insurance. (6) And it is further expressly covenanted by the parties hereto that no officer, agent, or representative of this company shall be held to have waived any of the terms and conditions of this policy, unless such waiver shall be endorsed hereon in writing." It is hereby understood and agreed by and between the company and assured that this policy is made and accepted in reference to the foregoing terms and conditions, which are hereby declared to be a part of this contract, and are to be used and resorted to in order to determine the rights and obligations of the parties hereto, and in all cases not herein otherwise especially provided for in writing.

On the trial, a map of the premises was offered in evidence,

objected to by plaintiff, and excluded by the court, to which ruling defendant excepted. The court also admitted the application above set out in evidence, but before the case was submitted to the jury withdrew it from their consideration, against the objections of defendant, to which an exception was taken; and the court ruled and submitted the case to the jury upon the theory that there were only two issues for them to determine, which were whether or not the premium was paid to defendant or its authorized agent, and whether or not the policy had been canceled. The numerous assignments of error may be condensed and stated in substance as follows: (1) Error in excluding the map of the premises, withdrawing the application upon which the policy was issued from the jury, and excluding evidence of a certain letter-press copy of letter offered in evidence; (2) error in instructions given to the jury. The exceptions taken to the admission of the letter-press copy of letter, marked "Exhibit F," and the question of the cancellation of the policy, were not pressed in the argument, and will not be considered by us.

1. The first alleged error necessary to be considered is the refusal of the court to admit in evidence the map of the premises insured. The only evidence introduced in regard to this map was that of Mrs. Henderson and Mr. Silsby. Mrs. Henderson says, (speaking of the map:) "I think it is Mr. Jacob Henderson's printing; and I now attach the map to my deposition, and mark it ' Exhibit A.'" Mr. Silsby says: "I received the map marked 'Exhibit A' by mail with the daily report sent in by our agent, Ben Phelon, at New Orleans, La., when he first reported to us that he had issued the policy in suit on this property." The objection made to its introduction was that it was "irrelevant and immaterial," and it is contended by appellant that, even admitting that it was not sufficiently identified, the court should not have excluded it under that objection. So far as is disclosed by the record, the evidence was irrelevant and immaterial, and we are of the opinion that the map was properly excluded. There was no issue that it tended to prove.

It was also inadmissable because its connection with the policy in this case was not sufficiently shown.

2. The evidence relative to the application was, in substance, that it was made out and forwarded to Phelon by Runk & Co.; and after it had been examined by Phelon, and the policy issued upon it, it was then forwarded to the home office of the defendant, at Mitchell, Dak. Appellant contends that Henderson Bros. and Runk & Co. were the agents of the plaintiff, and that Runk & Co. were authorized to make out and forward this application, and that the plaintiff is chargeable with the truth of the representations therein contained, which by the stipulations in the contract became warranties on the part of the plaintiff; and, two material facts being untrue, the policy is rendered void. And in support of this proposition it refers us to the clause in the policy providing that all persons other than the insured and the authorized agents of defendant who might procure the policy are to be deemed and taken to be the agents of the insured. This stipulation in the policy cannot change the facts as they actually existed at the time the policy was issued, or make the acts of persons binding upon the insured, unless such persons were in fact agents of the insured at the time the policy was procured, without proof that the stipulation in the policy was known to the plaintiff at the time the policy was applied for. No evidence of the existence of such actual knowledge on the part of the plaintiff was given; and the evidence discloses the fact that the policy in controversy was the first ever issued by defendant to the plaintiff, and the first, in fact, ever issued to any person in South Bend; hence it cannot be claimed that any presumption arises that the plaintiff had such knowledge. The policy itself does not contain the warranty relied on, nor is a copy of the application forwarded to Phelon by Runk & Co. attached to it; and therefore the plaintiff, so far as the evidence discloses, had no knowledge of the existence of the application made by Runk & Co. prior to the loss. Plaintiff's acceptance of the policy, therefore, if held to make this clause in the policy obligatory upon the plaintiff in any event, could not in justice be held to be binding

upon it until the acceptance of such policy.    The courts have
in many cases held such a stipulation in policies ineffectual to
shield insurance companies from the consequences resulting
from the acts of their own agents.

In Kausal v. Association, 31 Minn. 17, 16 N. W. Rep. 430,
the court says: "To be efficacious, such notice should be given
before the negotiations are completed.    The application pre-
cedes the policy, and the assured  cannot be presumed to know
that any such provision will be inserted in the latter.    To hold
that by a stipulation unknown to the assured at the time he
made the application, and when he relied upon the fact that the
agent was acting for the company, he could be held responsible
for the mistake of such agent, would be to impose burdens upon
the assured he never assumed."    And in Insurance Co. Ives, 56
Ill. 402, the court says:  "There is no magic power residing in
the words of that stipulation to transmute the real into the un-
real.    A device of mere words cannot, in a case like this, be
imposed upon the view of a court of justice in place of an  act-
uality of fact, and make this company and its agents the agents
of the appellees, and their doings the doings of the appellees."
Gans v. Insurance Co., 43 Wis. 108;  Boethcher v. Insurance
Co., 47 Iowa, 253;  Insurance Co. v. Myers, 55 Miss. 479;  Ellen-
berger v. Insurance Co., 80 Pa. St. 464;  Morrison v. Insurance
Co., 69 Tex. 353, 6 S. W. Rep. 605;  Sullivan v. Insurance  Co.,
34 Kan. 170, 8 Pac. Rep. 112;  Patridge v. Insurance Co., 17 Hun.
95;  Insurance Co. v. Crutchfield, 108 Ind. 518, 9 N. E. Rep. 458.
In opposition to the views here expressed, and sustained by the
above authorities and many others not cited, are the  decisions
of the courts of several states, entitled to great  consideration.
Rohrback v. Insurance Co., 62 N. Y. 47;  Alexander v. Same,
66 N. Y. 464;  Insurance Co. v. Stevens, 9 Allen, 332;  Wood  v.
Insurance Co., 126 Mass. 316.    Without at this time  determin-
ing the effect of the stipulation under consideration in the
policy further than in holding that such  stipulation was not
binding upon plaintiff prior to the acceptance of the policy, we
shall proceed to discuss the questions relating to the with-
drawal of the application from the jury without regard to  this

stipulation.   The question presented then is, for whom were Henderson Bros. and Runk & Co. acting in the procurement of this policy, and were they authorized by plaintiff to make out and forward the application under consideration?   It seems from the evidence that for some time prior to May, 1887, one Clifford, an insurance agent at South Bend, was attending to the insurance business of plaintiff, and, as policies would from time to time expire, renew them or get them renewed.   That, becoming ill, he turned over his insurance business to Henderson Bros., one of whom, when one of plaintiff's policies was about to expire, had a conversation with the secretary of plaintiff, which he states in his deposition as follows:   "About the first of May there was an expiration of a policy.   I called on them, [plaintiff,] and asked them if they wanted to renew it; telling them I was doing the business that Mr. Clifford had heretofore been doing; that I had taken charge of his business, and that all of his expirations would be my expirations then. I talked with Mr. Badet, one of the officers.   Mr. Badet told me to renew the policy in question, and they seemed to be satisfied that the business was taken by me."   He also says that he was agent for quite a number of insurance companies. Speaking of the manner of procuring the policy in controversy, he says:   "We remitted to Runk Co, agents at Newport, $34.00; that being the amount of premium, less 15 per cent commission.   Runk & Co. were general insurance agents, doing business at Newport, Kentucky.   Runk & Co notified us of the expiration of policies, and then they would afterwards furnish policies.   Our practice was to go to the parties, and ask them if they wanted the policy renewed.   If they did, I would request Runk & Co. to write it."   In regard to the application for this policy, Mr. Merkel, clerk for Runk & Co., testified as follows;   "We had no information other than that contained in the application.   After making out said application, 'Ex. D,' it was sent to Ben Phelon, at New Orleans.   Whenever Mr. Henderson would write us, and would state he wanted so much insurance on the South Bend Toy Mf'g Co., we would use the information we had on hand to secure policies for them.   We

must have received the information contained in Ex. D from A. B. Clifford. Some policies expired, and I believe the companies would not take the risk, and somehow or other we were short, and the application was made to Phelon for a policy, and he sent in a Dakota policy. We had no information other than that contained in the application marked 'Ex. D' as to the title of the property, and as to where painting and varnishing was done." Ben Phelon says: I allowed Runk & Co. commission on any business they sent me. Had no special contract with them. I charged Runk & Co. with the policies sent them, and credited them with all policies sent me. In making up my monthly statements, they were charged to the account of the assured for policies sent them On rendering bill, a deduction of 15 per cent was made on gross amount of premium." Again he says: "I issued five or six policies of the defendant company to various parties on applications forwarded by Runk & Co. for account of the assured under said policies, including one to plaintiff. * * * In issuing the policy to the plaintiff I relied wholly upon the information contained in above application, signed by Runk & Co., and said application is the basis upon which I issued the policy." We conclude our quotations from the testimony by a short extract from the evidence of Mr. Badet, secretary and treasurer of plaintiff: "Plaintiff never made any written application for the issuing of this policy. Plaintiff never authorized any person, or directed any person, to make any written application. Plaintiff never requested Henderson or Clifford to procure insurance for them. * * * I had nothing to do in the way of obtaining this policy of any other agency excepting J. D. & G. W. Henderson, and I never paid or employed them, or any other person, to act for us in obtaining insurance. The transaction in relation to issuing of the policy was carried on by me, and nothing was said in reference to any incumbrances." It seems to us quite clear from the evidence in this case that plaintiff employed neither Henderson Bros. nor Runk & Co. as its agents in procuring this insurance; plaintiff simply consenting to the renewal of policies by Henderson Bros. as they from time to time expired, and Henderson Bros.

either renewing them in companies represented by them or making application to Runk & Co. for the renewals in companies represented by that firm. The commission of Henderson Bros. when renewing in a company represented by them, was paid by their company, and when renewed by Runk & Co. was paid by that firm.

It is clear that Runk & Co. can in no sense be deemed the agents of plaintiff. They were insurance agents representing certain insurance companies, and applications were made to them by Henderson Bros., as the agents of such companies; and, whatever relation Henderson Bros. may have sustained to the plaintiff, it is certain under the evidence that Runk & Co. did not sustain the relation of agents of the plaintiff in this transaction, and had no authority to bind the plaintiff by any application they might make to Phelon for a policy. The case of Insurance Co. v. Ives, 56 Ill. 402, before cited, being quite analogous to the case at bar, we feel justified in quoting more at large from the opinion of the court in that case. In that case one Holmes, a local insurance agent, had placed a certain amount of insurance on the property of Ives & Co. in a company represented by him, and, being applied to for additional insurance on the property, he wrote to the agent of the Commercial Insurance Company for this additional insurance, obtained it upon an application signed by himself in the name of Ives & Co., delivered the policy to them, and collected the premium, which he forwarded to the agent of the insurance company. There were, as in the case at bar, certain stipulations in the application held to be warranties, and the question was whether or not he was the agent of Ives & Co., and whether or not the warranty in the application was binding upon Ives & Co. The policy contained a stipulation making all persons procuring the policy agents of the insured, as shown by the portions of the opinion before quoted.

The court, in its opinion, says: "Had Holmes really been employed by the assured as their agent to get these premises insured for them, we do not say that he would not have had an implied authority to sign their names to the customary appli-

cation, as being a necessary and proper means for effecting the insurance; but here the testimony was that Holmes was in the insurance business at El Paso. We suppose this to import that he was the agent of some one or more insurance companies, to act for them in making insurance, and not that he was the agent of applicants for insurance to obtain insurance for them. And it is not to be admitted that when an application is made to such a representative of an insurance company for insurance he is thereby constituted an agent of the applicant to make an application for him in writing, and sign his name to it, whereby the assured can be charged as upon an express warranty of the truth of the statements contained in it. It was for the jury to say whether the appellees did not rather apply to Holmes, as an insurance agent, to be insured, than to act for them, as their agent, to get them insured." In that case the facts seem to have been submitted to a jury under the rule, we presume, that in cases of conflicting evidence, or where the evidence is such that different minds might draw different conclusions therefrom, the question should be submitted to the jury. But where, as in the case at bar, the evidence was undisputed, and only one conclusion could be drawn from it, the court very properly determined the question as one of law, and withdrew it from the jury. Railway Co. v. Stout, 17 Wall, 663; Williams v. Railroad Co., (Dak.) 14 N. W. Rep. 97; Mares v. Railroad Co., (Dak.) 21 N. W. Rep. 5; Loudon, etc., Soc. v. Hagerstown Sav. Bank, 36 Pa. St. 498. But it is contended by appellant that, as the policy was issued upon the warranty contained in the application, if plaintiff is not bound by the warranty, then the policy should be held void as being obtained by fraud. We cannot so hold. The application was signed by Runk & Co. in their firm name. They did not assume to act as the agents of plaintiff, or make the application in its name. The application is precisely what it purports to be,—the application of Runk & Co. Phelon, when he issued the policy, knew precisely what he was issuing it upon; and the defendant, when it was received at the home office, had before it an application showing upon its face exactly what it was upon which

the policy was issued.   There was no fraud and no deception on the part of Runk & Co.   If Phelon, the general agent, of defendant, was not satisfied to issue the policy upon the application signed by Runk & Co., he could have refused to issue it until an application properly made and signed by the plaintiff was furnished him; but, having elected to issue the policy upon this application of Runk & Co., the defendant is bound by it, though the plaintiff is not bound by the application.   The defendant, when the application was received, and it saw what it was, could have canceled the policy, and returned the premium before a loss.   Hence no injustice will be done by holding the policy good when the loss occurred nearly three months after the issue of the policy.   Section 4157, Comp. Laws, is as follows:   "Every express warranty, made at or before the execution of a policy, must be contained in the policy itself, or in another instrument signed by the insured and referred to in the policy, as making a part of it."   The defendant and Phelon, its general agent, must be presumed to have known that no application containing a warranty was binding upon the plaintiff unless it was signed by plaintiff or by its authorized agent in its name.   The defendant having, therefore, by its duly authorized agent, issued the policy in controversy without the written application of plaintiff, cannot, after a loss, avoid the policy, or be relieved from the obligation it has assumed.

3.   This brings us to the last question presented, and that is, did the court properly instruct the jury upon the question submitted to it, namely, the payment of the premium?   That the premium was paid by plaintiff to Henderson Bros., and by them remitted to Runk & Co., from whom they received the policy, less their commission of 15 per cent., is not disputed. But it is contended by the appellant that Runk & Co. were the agents of plaintiff, and that, as they did not, as a matter of fact, pay it over to Phelon, but only credited him with it, it never was paid to defendant, and the policy is for that reason invalid.   We cannot assent to this proposition.   As before stated, the evidence fails to show that Runk & Co. were the agents of plaintiff,—or at least a jury was justified in so find-

ing,—but were, as to the delivery of the policy and the receipt of the premium, the agents of defendant. Phelon, by his course of business with Runk & Co., made that firm the agents of defendant to the extent at least of authorizing them as its agents to deliver the policy and collect the premium. An insurance agent is authorized to appoint sub-agents for the delivery of policies and receiving the premium. Bodine v. Insurance Co., 51 N. Y. 117; Insurance Co. Fahrenkrug, 68 Ill. 463; Mayer v. Insurance Co., 38 Iowa, 304; May, Ins. p. 177. We do not deem it necessary to discuss the separate exceptions to the charge of the court, as they are based mainly upon the theory of the case contended for by appellant, and, as we have considered the case upon the respective theories of counsel for the respective parties, it would only be a repetition to consider them further. We are of the opinion that the charge of the court fully and fairly presented the case to the jury. Finding no error in the record, the judgment of the court below is affirmed.

BENNETT, J., concurring. KELLAM. J., not sitting in the case, or taking any part in the decision.

Reporter: A rehearing was granted in this case May 28, 1891. Upon the rehearing the court adhered to the views expressed in the foregoing opinion.