## FROMHERZ V. YANKTON FIRE INS. CO.

1. H. & Co., insurance agents in Chicago, but not agents of the defendant company, solicited plaintiff, through S., an employe, to take insurance with them. The amount, and how it should be distributed over fixtures, stock, etc., was agreed upon, and a memorandum made by S. H & Co. declined to accept any risk in the block in which plaintiff was located. S. then offered plaintiff certain policies, which he refused, because "mutual." Plaintiff then gave S. a written order or request for other insurance, which he agreed to accept and pay for, if satisfactory to him. S. then turned the memorandum and the request over to C., G. & Co., who did not represent or have any relations with the defendant company, but who styled themselves "brokers." They undertook to get the insurance wanted, and sent a written statement or application to the defendant company, upon which, without other knowledge or information as to the risk, the policy was issued. *Held,*

that C.; G. & Co. were the agents of the plaintiff, and not of the company.

2. The statement or application thus forwarded, upon which only the risk was accepted and the policy issued, contained representations that the building in which the insured property was located was "fully equipped with sprinklers," and that "all companies represented in Chicago have full lines on building or some tenant," when in fact the building never was, then or subsequently, equipped with sprinklers, and risks upon or in said building were practically uninsurable by companies doing business in Chicago. *Held*, that such misrepresentations affected not only the building itself, but the "condition" of the property insured in it, and, being shown to be material, under the terms of the policy, avoided defendant's liability on its policy.

3. *Held* further, that, there being no disputed questions of fact, a verdict for defendant was properly directed by the court.

(Syllabus by the Court.   Opinion filed June 15, 1895.)

Appeal from circuit court, Yankton county. Hon. E. G. SMITH, Judge.

Action to recover upon a fire insurance policy.   Defendant had judgment and plaintiff appeals.   Affirmed.

The facts are stated in the opinion.

*N. J. Cramer*, for appellant.

If an insurer denies liability, asserts that the policy is null and void, that it has been canceled or never attached, or that there was no contract or otherwise repudiated liability, the proof is entirely waived.   Peet v. Dak. In. Co., 47 N. W. 532; Johnson v. Dak. In. Co., 45 N. W. 799; Beatty v. Masterson, 13 S. W. 1014; Assur. Co. v. State, 15 N. E. 318; Ins. Co. v. Spiers, 8 S. W. 453; Theving v. Ins. Co., 111 Mass., 110; Brink v. Insurance Co. 80 N. Y., 108; Titus v. Ins. Co., 81 N. Y., 410; Caryeon v. Ins. Co., 44 N. W. 431; O'Brien v. Ins. Co., 17 N. W. 726; Ins. Co. v. Gibson, 14 S. W. 672; Vankirk v. Ins. Co., 48 N. W. 798; Ins. Co. v. Bachelder, 49 N. W., 217; Young v. Ins. Co. 52 N. W. 454; Ins. Co. v. Gracey, 24 Pac. 577; Wagon Co. v. Ins. Co., Fed. 454; Green v. Ins. Co., 50 N. W. 558; Wood on Ins. 496; May on Ins. 469.   It is only when there is a total loss of the property that there can be arbitration to determine the amount and value thereof, and then

only at the request of either party.  Ins. Co. v. Wilson, 23 Am. 720; Ins. Co. v. Badger, 10 N. W. 504; Ins. Co. v. Barwick, 54 N. W. 519; Nurney v. Ins. Co., 30 N. W. 350; Randall v. Ins. Co., 25 Pac. 953; Wright v. Ins. Co., 20 Atl. 716; Walker v. Ins. Co., 33 Pac. 517; 2 May on Insurance 492; 2 Wood on Insurance 1014. When an insurance policy provides for arbitration at the request of either party, and also that suit cannot be commenced or maintained until an award should have been made and neither party avails himself of such right to arbitrate within a reasonable time, it is deemed as waived and an action to recover the loss may be sustained.  Wallace v. Ins. Co., 41 Fed. 742; Mark v. Ins. Co., 91 N. Y. 663.  If an insurance policy provides for arbitration and if a difference exists but does not provide that suit or action shall not be commenced or maintained until after an award or arbitration, then it is not a condition precedent.  Badinfield v. Mass., 27 N. E., 769; Trueman v. Ins. Co., 144 Mass, 572; Cropley v. Ins. Co., 27 Fed. 30; Ins. Co. v. Wilson, 25 Pac. 629; Hamilton v. Ins. Co., 11 Sup. Ct., 133; Ins. Co. v. Pulver, 18 N. E. 804. When arbitration is made a condition precedent and after a loss or proof of loss, the insurance company refuses to pay, or claims that the policy is void or has been canceled or that there is no contract, then the condition for arbitration is waived.  Farnum v. Ins. Co., 23 Pac., 869; Hennessy v. Ins. Co., 35 Pac., 585; Ins. Co. v. Berwick, 54 N. W. 519; Ins. Co. v. Putman, 30 N. W. 246; Bailey v. Ins. Co., 46 N. W. 440; Wainer v. Ins. Co., 26 N. E. 877.

*French & Orvis*, for respondent.

To the extent that an insurance broker acts as such broker, he is agent of the assured and not of the company.  Ins. Co. v. Reynolds, 36 Mich. 502; Rohrback v. Ins. Co., 62 N. Y. 47; Alexander v. Ins. Co., 66 N. Y. 464; Allen v. Ins. Co., 19 L. J. 979. An insurance broker who on his own responsibility without any previous agreement with, or authority from the company, undertakes to solicit or place insurance, acts for the insured and not for the company.  Criswell v. Riley, 30 N. E. 1101; Marland v. Royal, 71 Penn. 393; Wilbur v. Ins. Co., 122 N. Y. 439; Pottsville v.

Minneque, 100 Pa. 137; Linpard v. Ins. Co., 34 Beaver, 291; Mc-Farland v. Peabody, 6 W. Va., 425; Young v. Newark, 19 Ins. L. J. 423; Oil Co. v. Triumph, 64 N. Y. 85.

KELLAM, J.   This is an action on a fire insurance policy.   At the close of the evidence the court directed a verdict for the defendant, and plaintiff appeals.   The fire and the loss are not disputed.   The principal, and, we think, really the only debatable question in the case is whether Collins, Green & Co., whose relation to the transaction will be more fully noticed hereafter, were the agents of the plaintiff or of the defendant.   Plaintiff was a manufacturer of cigars, and his factory, which was the subject of the insurance, was located in the Burton Block, in the city of Chicago.   Soon after plaintiff's location in said block, one Robert L. Shute, an insurance solicitor in the employ of G. M. Harvey & Co., general insurance agents, called upon plaintiff, and solicited insurance from him upon his stock of cigars, etc.   Defendant told him he would take about $3,000 of insurance, and a statement or memorandum was then made out, showing property to be insured, and how the insurance was to be distributed.   Harvey & Co. declined to take any insurance on property in that block for any company represented by them.   Afterwards Shute took two policies to plaintiff, who refused them, because they were "mutual policies."   At that time plaintiff gave him a written order or request for the insurance which he wanted, but the paper is not in evidence.   When Harvey & Co. declined to take the risk, Shute turned the order of plaintiff for insurance over to Collins, Green & Co., and requested them to get it.   He also gave them the statement referred to as to the property to be insured.   They undertook to get the insurance. Up to that time they were not, and never had been, agents of the defendant company, and had no relations of any kind with it. Upon receipt by the company of the written application, hereinafter more particularly described, the policy sued upon was written by the company at its home office, forwarded to Collins, Green & Co. by defendant company, with a letter, saying: "If this policy

is not accepted, the same is to be at once returned canceled to this office.   Of course, you understand we do not grant your agency authority in any manner or particular." On receipt of the policy, Collins, Green & Co. sent it to Harvey & Co.; who turned it over to Shute, and he delivered it to plaintiff.   It becomes necessary to determine upon these facts for whom Collins, Green & Co. must be held to have acted, and so whether the plaintiff or the defendant company is bound by what they did, for the statement or application forwarded to the company by them, and upon which the policy was issued, contained affirmative representations of facts, which, if material and untrue, would, by the terms of the policy, defeat it as a contract of insurance.   If the application referred to had been signed by the plaintiff himself, or expressly authorized by him, the case would present little difficulty.   It does not appear, and the contrary is probably true, that plaintiff, when he received the policy, knew that it was not written by and in one of Harvey's companies.   We are inclined to think that appellant attaches undue importance to this fact, but, whatever significance it may have, and whatever may have been the understanding of the plaintiff, it is undisputed that Harvey & Co. declined to take the risk in any of their companies, and that when plaintiff rejected the mutual policies which Shute offered him, he gave him a written order or request to procure other policies, or, as plaintiff insists, an agreement to take and pay for other policies, if they should be acceptable to him.   It is also undisputed that neither Harvey & Co. nor Collins, Green & Co. were or ever had been agents of the defendant company, or had ever done any business for it, or had any relations whatever with it.   Up to the point of issuing the policy by the defendant at its home office, there had been no act of any person authorized to represent defendant, or by any person not an absolute stranger to the defendant.   The first knowledge the company had that plaintiff wanted insurance was by the receipt of the application from Collins, Green & Co.   This application was instigated, if not authorized, by the plaintiff.   He gave Shute an order to get insurance, agreeing to accept and pay for it if the policies and companies were

satisfactory.  This order Shute turned over to Collins, Green & Co.
It was an open commission, and evidently contemplated the pro-
curing of insurance in any company or companies whose policy and
responsibility should satisfy and be acceptable to the plaintiff.
The defendant company only became related to and a party in the
transaction when it accepted the risk.   Shute testifies that Collins,
Green & Co. promised to get the insurance, but they did not so
promise for the defendant company, for they had neither express
nor ostensible authority to do so.   There was no testimony from
Collins, Green & Co., and their relations, both to the plaintiff and
the defendant, must be determined from the facts already men-
tioned.  Having no authority, either direct or indirect, to bind
either party, they occupied as to both the position of brokers or
third parties participating in the negotiation for insurance.   In the
statement or application forwarded to the company they styled
themselves "brokers."   The policy provided "that any person other
than the assured having procured this policy   *   *   *   shall be
deemed to be the agent of the assured, and not of this company, in
any transaction relating to this insurance."

Allen v. Insurance Co., 123 N. Y. 6, 25 N. E. 309, presented
facts much like those of this case, and upon the question of whose
agent the intermediate party procuring the insurance was the
court said:   "So far as it appears, Noble had no relations what-
ever with the defendent, other than that he forwarded this paper
writing, which contained statements of the amount of insurance
proposed for and of the privileges desired.   He certainly appears to
have been nothing more than an insurance broker, soliciting insur-
ance business; and when, upon the acceptance of the risk, he received
back a policy of the company for the plaintiff, his sole office was
simply to deliver it for the company, and to collect the premium.
That is certainly not enough to constitute him an agent of the
company, with authority to bind it retroactively or presently in
transactions relating to the insurance.   Circumstances are wholly
wanting from which we may presume the authority of an agent.
Then, too, the policy contained the provisions that the company

would not be bound by any acts of or to any agent or other person which were not contained in the policy, and further, that any person other than the assured procuring the policy, or any renewal thereof, should be deemed the agent of the assured and not of the company. To these conditions the plaintiff's assent is presumed to have been given by his acceptance of the policy, and there is no reason why he should not be bound by them. * * * A mere insurance broker, as Noble appears to have been, cannot be converted into an agent of the insurance company, without evidence of some action on the part of the company, or of facts from which a general authority to represent it, might be fairly inferred." Under similar conditions the court said in Wilber v. Insurance Co., 122 N. Y. 443, 25 N. E. 926: "It was entirely competent for the parties to agree that a third person participating in the negotiations should, for the purpose of securing the policy, be deemed an agent of the assured." In Insurance Co. v. Reynolds, 36 Mich. 502, the court held that, "so far as an insurance agent acts as an insurance broker, he is agent for the insured and not the insurer." In Lange v. Insurance Co., 3 Mo. App. 591, it was held that "an insurance broker placing insurance is not the agent of the insurer, but of the insured"; and this is said to be the established rule in May on Insurance (section 123). As was held by this court in South Bend Toy Manuf'g Co. v. Dakota Fire & Marine Ins. Co., 2 S. D. 17, 48 N. W. 310, this stipulation cannot be allowed to change the effect of an established fact, and thus to make the agent of the insurance company the agent of the insured, and that was the effect of all the cases cited in the opinion in that case. In none of them was it held that it was not competent for the parties to the insurance contract to so argee as to a mere go-between or broker. The rule, of course, is only intended to state a general proposition unaffected by particular facts, for it certainly would be competent for the insurer to make the broker its own agent, and so be bound by his acts; but in this case we discover no facts which could have such effect. Up to the commencement of this negotiation for insurance the broker

was a stranger to both parties. He was the agent of neither. The plaintiff set him in motion, and under the authority emanating only from the plaintiff he applied to the defendant company for insurance. By issuing the policy the company expressed its willingness to insure the risk submitted in and by such statement. Appellant claims that Collins, Green & Co., should be held to be the agents of, or at least to represent, the defendant company, rather than the plaintiff. We are unable to find any facts in the case or to adopt any theory that would justify such a holding. They could not make themselves such agents without the consent of the company. It had no knowledge of or relation with them until it received the application from them in behalf of plaintiff. As appears by the evidence, the company had no agent or representative in Chicago, and receiving this application it had a right to understand that it came, not from somebody who, without its authority or knowledge even, was assuming to represent it, but rather that it came from somebody who desired to procure insurance upon the conditions named in the application or statement. The statement or application itself informed the company that Collins, Green & Co., were not attempting to act as its agents or for it, for they signed themselves "brokers."

An important and differential fact between this case and the South Bend Toy Manuf'g Co. v. Dakota Fire & Marine Ins. Co. *supra,* upon which appellant relies, is that in the latter case the authority of Runk & Co., who were strangers to the insurance company; to make the insurance, was traced directly to Ben Phelan, who was the general agent of the insurance company. If Harvey & Co. had been the agents of the defendant company in this case, and had turned the statement referred to over to Collins, Green & Co., with a request to procure this insurance, the case would have been, in that respect, similar to the case cited; but, as it is, the very fact is lacking upon which that case was made to turn. The same suggestion is pertinent in the case of Insurance Co. v. Ives, 56 Ill. 402. The application, though made by one not an expressly authorized agent of the company, was made by and

under the specific direction of one who was such agent. The evidence shows that even if plaintiff did not know of the existence of this stipulation in the policy from his examination of it before acceptance he did know shortly after its delivery that the defendant company had no agent in Chicago, for he was so notified by the secretary of the company, and that the transaction was entirely between the company and himself. But we think that upon his own evidence he must be held to have acquiesced in the terms of the policy, for he insists that; having rejected two policies, his written commission to Shute, which Shute calls an "order," was only an agreement that he would take and pay for policies, if satisfactory and acceptable to him. He examined this to some extent at least, and then accepted and paid for it. These facts would ordinarily be held to mean that he accepted the policy knowing its terms, or was willing to accept it, assuming the risk of its terms being satisfactory. We think the trial court was right in holding that Collins, Green & Co., did not represent or bind the defendant company.

· The acceptance of this risk and the contract of insurance were based upon the statement sent defendant by Collins, Green & Co. Acting upon this information, it issued the policy. The statement informed the defendant company that "all companies represented in Chicago have full lines on building or some tenant," and that the building was "fully equipped with sprinklers." It is conceded that neither of these statements was true, but that risks in and upon the Burton Block were practically uninsurable in companies doing business in Chicago. Bowden, superintendent of surveys for the Underwriter's Association, testified, "The majority of the insurance companies doing business in the city of Chicago had refused to write risks upon that block." Robinson, an inspector of automatic sprinklers in the Chicago Underwriter's Association, testified that these sprinklers would reduce the risk, as recognized by insurance companies generally, 25 per cent., and that there were no sprinklers in this building at the time of the insurance, nor at the time of the fire, nor had there ever been any. Appellant con-

tends that these misrepresentations did not affect the contract under the stipulation in the insurance policy that "this company will not be liable under and by virtue of this policy, if there be any omissions, misrepresentation, nondisclosure, or concealment of the title, incumbrances, condition, location, or occupancy of the premises," because they did not relate to the property insured, but to the building in which it was located. We cannot assent to this view. The just and reasonable compensation for insuring any property against loss by fire must depend upon the risk assumed, and this in turn depends largely upon the "condition" of the property insured. The very first and primary definition given by Webster to the word "condition" is, the "state or situation as regards external circumstances." In this respect it means more than location; it means location and environment. We should be unwilling to hold that personal property represented to be and insured as contained in a fireproof building was still insured although it was actually located in a combustible powder magazine, simply because the building itself was located as described. There were no disputed facts in this case, and as, in our judgment, the law is plainly against recovery by the plaintiff, there was no error in the direction of a verdict for the defendant by the trial court. The judgment is affirmed. All the judges concur.