JULIA KAUSAL and another *vs.* MINNESOTA FARMERS' MUTUAL FIRE INSURANCE ASSOCIATION.

July 11, 1883.

**Fire - Insurance — Company's Agent, in filling out an Application, represents Company and not Applicant.**—Agents of an insurance company, authorized to procure applications for insurance, and to forward them to the company for acceptance, must be deemed the agents of the insurers in all that they do in preparing the application, or in any representations they may make as to the character or effect of the statements therein contained. Hence, when such agent, either by his direction or direct act, makes out an application incorrectly, notwithstanding all the facts are correctly stated to him by the applicant, the error is chargeable to the insurer and not to the insured. This is the rule in the case of "mutual" as well as of "stock" or "proprietary" companies.

**Same—Rule not Changed by Stipulation in Policy.**—The rule is not affected or changed by a stipulation inserted in the policy subsequently issued, that the acts of such agent in making out the application shall be deemed the acts of the insured and not of the insurer. Such stipulation does not convert acts done for the insurer into the acts of the insured.

**Same—Parol Evidence Admissible to show Statement of Insured Incorrectly Written by Agent.**—The admission of verbal testimony to show that the application was filled up by the agent of the company, and that the facts were correctly stated to him, but that he, without the knowledge of the insured, misstated them in the application, is not in violation of the rule that verbal testimony is not admissible to vary a written contract. It proceeds upon the ground that the contents of the paper was not the statement of the applicant, and that the insurance company, by the acts of their agents, are estopped to set up that it is the representation of the insured.

**Same—Action by Husband and Wife on Policy issued to them jointly on Property of Husband.**—The husband was the sole owner of a house and other personal property situate upon the land of his wife. The agent of defendant, being fully informed of the facts as to the situation and title of the property, made out a joint application by the two for insurance, which they signed, upon the representation and statement of the agent that such was the proper mode under the circumstances; and, upon such application, a joint policy was issued, insuring them upon the house and

v.31—2

other personal property as the property of both.  *Held*, that the husband and wife could, in case of loss, maintain a joint action upon the policy.  It was entirely competent for all parties to treat this as joint property for the purposes of insurance, and to make the policy payable to the two.

The plaintiffs brought this action in the district court for Hennepin county, to recover upon a policy of insurance against fire, issued to them jointly by the defendant, upon a certain house and furniture in which they allege that they had an insurable interest, and which were subsequently destroyed by fire.  The answer of the defendant admits the issuance of a joint policy to the plaintiffs, alleges that the same was issued in reliance upon plaintiffs' application for membership in defendant and for the insurance mentioned, and upon the statements and answers contained in such application, which the plaintiffs agreed should be warranties on their part; that "in and by said policy it is provided that any misrepresentation by the assured of the value, condition, situation, title or occupancy of the property, or any omission to make known every fact material to the risk, or any misrepresentation whatever, or fraud, or attempt at fraud, whether in written application or otherwise, or fraud, or false swearing in proofs of loss, shall cause a forfeiture of all claims under the policy," and "that if the interest of the assured, whether as owner, or trustee, factor, agent, or mortgagee, lessee or otherwise, be not truly stated, then the policy shall be null and void."  The answer further alleges that in their application the plaintiffs stated that they were the owners of the property described in the application, and that such statement was false; that in such application the plaintiffs stated that there was no incumbrance upon any of the property described, and that such statement was false, specifying certain incumbrances; that in such application the plaintiffs stated that the dwelling-house described was completed and painted, and that it was used and occupied as a dwelling-house solely, and that such statements were false.  The answer also contains allegations of false swearing in the proofs of loss, of negligence of plaintiffs causing the fire, and of the amount recoverable under the policy, and denies the alleged value of the property destroyed.

The reply alleges that the plaintiffs "are foreigners, and ignorant of the English language, and did not know what was contained in the application for insurance mentioned in said answer; that the same was made out by an agent of the defendant, and plaintiffs signed the same by his direction, without knowing the contents of the same; that the said Julia Kausal was, at the time of such insurance, the owner of an undivided three-quarters of the land upon which said dwelling-house stood, and in possession of all said land, and the said plaintiff William Kausal was the owner of all of said dwelling-house; that all of such ownership was told to said agent of the defendant at the time of such insurance, and the defendant had at such time due notice of the same." The reply admits "that said house was not painted," but alleges that "the same was completed," and "that, at the time the said application was made, an agent of defendant, duly authorized to solicit insurance and to take and receive applications therefor on the part of the defendant, was present at the said house so insured, and examined the same, and fully knew all the circumstances of its condition, and solicited said insurance, and wrote out said application as aforesaid, and told the plaintiffs the same was correct, and induced them to sign the same." The reply denies all other allegations than those above admitted.

On the trial, before *Young,* J., and a jury, the defendant objected to the reception of any evidence on the part of the plaintiffs, on the ground that it is incompetent, irrelevant and immaterial under the pleadings, which objection was sustained. The plaintiffs then offered to prove all the allegations of the reply, which offer was rejected, upon defendant's objection, and, on defendant's motion, the action was dismissed. Plaintiffs appeal from an order refusing a new trial.

*Wilson & Lawrence,* for appellants.

*Levi, Cray & Hart* and *J. F. Keene,* for respondent.

The reply is bad, the title therein admitted not being that warranted in the application. *Reynolds* v. *State Mut. Ins. Co.,* 2 Grant's Cas. (Pa.) 326; *Kibbe* v. *Hamilton Mut. Ins. Co.,* 11 Gray, 163. Under the joint application and policy it is necessary to show joint ownership of the property. Under the policy both must recover, or neither;

*Fowler* v. *Frisbie*, 37 Cal. 34; *Lawrence* v. *Montgomery*, 37 Cal. 183; and parol evidence cannot be admitted to control or vary the terms of a written contract. *Barrett* v. *Union M. F. Ins. Co.*, 7 Cush. 175; *Chase* v. *Hamilton Ins. Co.*, 20 N. Y. 52; *Cheriot* v. *Barker*, 2 John. 346.

The contract was an entirety, and not severable. If avoided in part, it fails *in toto*. *Plath* v. *Minn., etc., Ins. Assn.*, 23 Minn. 479; *Brown* v. *People's Mut. Ins. Co.*, 11 Cush. 280; *Lee* v. *Howard Fire Ins. Co.*, 3 Gray, 583; *Richardson* v. *Maine Ins. Co.*, 46 Me. 394.

The application, by whomsoever made, being the act of the assured; the company having no means of knowing the condition of the property described in it, save by its contents; and it being a mutual company, into which the applicants were seeking to introduce themselves, it became the duty of the applicants to see to it, at their risk, that its contents were true; and the facts, if true, pleaded in attempted avoidance of the force of the admittedly false warranties contained in their application, as to the agent's information and knowledge of the true state of facts, inconsistent therewith, and not averred to have been brought home to the company, were entirely immaterial and insufficient to charge respondent. *Richardson* v. *Maine Ins. Co.*, 46 Maine, 394; *Susquehanna Ins. Co.* v. *Perrine*, 7 Watts & Serg. 348; *Smith* v. *Insurance Co.*, 24 Pa. St. 320; *Jennings* v. *Chenango Co. M. Ins. Co.*, 2 Denio, 75; *Chase* v. *Hamilton Ins. Co.*, 20 N. Y. 52; *Alexander* v. *Germania Fire Ins. Co.*, 66 N. Y. 464; *Rohrback* v. *Germania Fire Ins. Co.*, 62 N. Y. 47; *Barteau* v. *Phœnix M. Life Ins. Co.*, 67 N. Y. 595; *Holmes* v. *Charleston M. Fire Ins. Co.*, 10 Met. 211; *Jenkins* v. *Quincy Mut. F. Ins. Co.*, 7 Gray, 370; *Barrett* v. *Union M. F. Ins. Co.*, 7 Cush. 175; *Kibbe* v. *Hamilton M. Ins. Co.*, 11 Gray, 163; *Abbott* v. *Shawmut Mut. F. Ins. Co.*, 3 Allen, 213; *Stevens* v. *Warren*, 101 Mass. 564; *Wilson* v. *Conway F. Ins. Co.*, 4 R. I. 141.

MITCHELL, J. 1. On principle, as well as for considerations of public policy, agents of insurance companies, authorized to procure applications for insurance, and to forward them to the companies for acceptance, must be deemed the agents of the insurers and not of the insured in all that they do in preparing the application, or in any representations they may make to the insured as to the charac-

ter or effect of the statements therein contained. This rule is rendered necessary by the manner in which business is now usually done by the insurers. They supply these agents with printed blanks, stimulate them by the promise of liberal commissions, and then send them abroad in the community to solicit insurance. The companies employ them for that purpose, and the public regard them as the agents of the companies in the matter of preparing and filling up the applications,—a fact which the companies perfectly understand. The parties who are induced by these agents to make applications for insurance rarely know anything about the general officers of the company, or its constitution and by-laws, but look to the agent as its full and complete representative in all that is said or done in regard to the application. And in view of the apparent authority with which the companies clothe these solicitors, they have a perfect right to consider them such. Hence, where an agent to procure and forward applications for insurance, either by his direction or direct act, makes out an application incorrectly, notwithstanding all the facts are correctly stated to him by the applicant, the error is chargeable to the insurer and not to the insured. *Ins. Co.* v. *Mahone*, 21 Wall. 152; *Ins. Co.* v. *Wilkinson*, 13 Wall. 222; *Malleable Iron Works* v. *Phœnix Ins. Co.*, 25 Conn. 465; *Hough* v. *City Fire Ins. Co.*, 29 Conn. 10; *Woodbury Savings Bank* v. *Charter Oak Ins. Co.*, 31 Conn. 517; *Miner* v. *Phœnix Ins. Co.*, 27 Wis. 693; *Winans* v. *Allemania F. Ins. Co.*, 38 Wis. 342; *Rowley* v. *Empire Ins. Co.*, 36 N. Y. 550; *Brandup* v. *St. Paul F. & M. Ins. Co.*, 27 Minn. 393; 2 Am. Lead. Cas. (5th Ed.) 917 *et seq.;* Wood on Insurance, *c.* 12; May on Insurance, § 120.

2. After the courts had generally established this doctrine, many of the insurance companies, in order to obviate it, adopted the ingenious device of inserting a provision in the policy that the application, by whomsoever made, whether by the agent of the company or any other person, shall be deemed the act of the insured and not of the insurer. But, as has been well remarked by another court, "there is no magic in mere words to change the real into the unreal. A device of words cannot be imposed upon a court in place of an actuality of facts." If corporations are astute in contriving such provisions, courts will take care that they shall not be used as instruments of

fraud or injustice. It would be a stretch of legal principles to hold that a person dealing with an agent, apparently clothed with authority to act for his principal in the matter in hand, could be affected by notice, given after the negotiations were completed, that the party with whom he had dealt should be deemed transformed from the agent of one party into the agent of the other. To be efficacious, such notice should be given before the negotiations are completed. The application precedes the policy, and the insured cannot be presumed to know that any such provision will be inserted in the latter. To hold that, by a stipulation unknown to the insured at the time he made the application, and when he relied upon the fact that the agent was acting for the company, he could be held responsible for the mistakes of such agent, would be to impose burdens upon the insured which he never anticipated. Hence we think that if the agent was the agent of the company in the matter of making out and receiving the application, he cannot be converted into the agent of the insured by merely calling him such in the policy subsequently issued. Neither can any mere form of words wipe out the fact that the insured truthfully informed the insurer, through its agent, of all matters pertaining to the application at the time it was made. We are aware that in so holding we are placing ourselves in conflict with the views of some eminent courts. But the conclusion we have reached is not without authority to sustain it, and is, as we believe, sound in principle, and in accordance with public policy. Wood on Insurance, § 139; May on Insurance, § 140; *Commercial Ins. Co.* v. *Ives*, 56 Ill. 402; *Gans* v. *St. Paul F. & M. Ins. Co.*, 43 Wis. 108; *Columbia Ins. Co.* v. *Cooper*, 50 Pa. St. 331.

3. It is contended by respondent that there is a distinction in this regard between "stock" and "mutual" insurance companies; that the difference in the character of the companies makes a difference in the relative duties of the applicant and the company, and in the authority of the agents employed; that in the case of a mutual company, the application is in effect not merely for insurance, but for admission to membership,—the applicant himself becoming a member of the company upon the issue of the policy. By some courts a distinction in this respect is made between the two classes of companies.

This distinction is usually based upon the ground that the stipulations held binding upon the insured are contained in the charter or by-laws of the company, and that a person applying for membership is conclusively bound by the terms of such charter and by-laws.  Such is not this case, for the stipulations claimed to bind the insured are only in the policy.  But, so far as concerns the questions now under consideration, we fail to see any distinction between the two kinds of companies, and we feel confident that the average applicant for insurance is rarely aware of any.  It is true that, in the case of a mutual company, the insured becomes in theory a member of the company upon the issue of the policy.  But in applying and contracting for insurance, the applicant and the company are as much two distinct persons as in the case of a stock company, and we see no reason for holding the agent who takes the application any less the agent of the insurer in the one case than in the other.  The membership does not begin until the policy is issued.  As to all previous negotiations the agent acts only for the company.  *Columbia Ins. Co.* v. *Cooper, supra;* May on Insurance, §§ 139 *et seq.*

4.  Verbal testimony is competent to show that the application was filled up by the agent of the company, and that the facts were fully and correctly stated to him, but that he, without the knowledge of the insured, misstated them in the aplication.  This was not in violation of the rule that verbal testimony is not admissible to vary a written contract.  It proceeds upon the ground that the contents of the paper was not his statement, though signed by him, and that the insurance company, by the acts of their agent in the matter, are estopped to set up that it is the representation of the insured.  *Ins. Co.* v. *Wilkinson, supra;* May on Insurance, § 143, and cases cited, note 3.

5.  It appears that the property covered by the policy was the several property of William Kausal, whereas the policy was a joint one to him and his wife, as if upon the joint property of the two.  On this ground it is claimed that there can be no recovery, because a joint policy to two does not cover the several property of either.  Had plaintiffs taken out this policy without disclosing the real nature of their interest in the property, there might be something in this sug-

gestion. But according to the offers of plaintiffs, which must here be taken as the facts, the wife was the owner of an undivided three-fourths, and in the actual possession of the whole of the land upon which the house and the other personal property covered by the policy were situate. The husband erected the house with his own money, under a license from and an agreement with his wife that he might do so, and should have the right to remove it at pleasure. At the time the application for this insurance was made, defendant's agent, authorized to take such applications, was personally present on the premises, and was first fully informed by the plaintiffs of all these facts, and then himself wrote out the application, and told William Kausal that it was correct. William Kausal then signed it, and also signed his wife's name thereto, upon the statement and representation of the agent that such was the proper mode of making the application. In short, it appears that the agent, after being informed that it was the individual property of the husband, although situated on the land of the wife, directed the making of a joint application, and, upon such application, the defendant issued a joint policy, insuring the two against loss by the destruction of the property by fire, and that the plaintiffs, relying upon the representations of the agent that this was, under the circumstances, the proper course, made the application in this form, and accepted the joint policy.

On this state of facts, if the policy does not cover the loss, it is the fault of the defendant and not of the plaintiffs. It seems clear that plaintiffs are not without remedy. We are not prepared to say that William Kausal alone might not have maintained an action, at least upon asking to have the policy reformed; but we see no good reason why, under the facts of this case, the two plaintiffs to whom the policy was issued cannot maintain a joint action. The policy is not a wagering policy, because, between the two plaintiffs, title to the whole of the property was in the beneficiaries to whom the policy ran, and it can make no difference to the defendant in what way their interests are apportioned, or whether it all belongs to one. It brings in no new party to the contract, and, by issuing the policy to the two, the defendant admits that both are proper persons to insure. It was entirely competent for all parties to treat this as joint property for the

purposes of insurance, and that the loss, if any, should be payable to the two plaintiffs: This is, in effect, just what they have done, and what defendant not only assented to, but advised and directed. If the husband, who owned the property, assented to this, and if the defendant, with full knowledge of all the facts, agreed to it, we fail to see what principle, either of law or justice, is violated by enforcing the contract just as the parties have made it. *Peck* v. *New London Mut. Ins. Co.*, 22 Conn. 575; *Castner* v. *Farmers' Mut. F. Ins. Co.*, 46 Mich. 15.

Order reversed.