EDWIN C. WHITNEY *vs.* NATIONAL MASONIC ACCIDENT ASS'N.

Submitted on briefs May 2, 1894. Affirmed June 12, 1894.

No. 8796.

**Insurance solicitor is the agent of the insurer in the representations he makes to the insured.**

The rule laid down in Kausal v. Minnesota Farmers M. F. Ins. Ass'n, 31 Minn. 17, that agents of an insurance company authorized to procure applications for insurance, and to forward them to the company for acceptance, must be deemed the agents of the insurers in all that they do in preparing the application, or in any representations they may make as to the character or effect of the statements therein contained, *held* to apply in the case of a mutual benefit association organized for the purpose of indemnifying its members on account of accidents occurring to them, the necessary money being raised solely by assessments upon said members.

**The evidence, what it shows.**

*Held,* further, that there is nothing in the evidence herein tending to indicate that the plaintiff, who, while a member, met with an accident, participated in the alleged misstatements contained in the application made out by the agent, or had any knowledge of them. *Held,* further, that from the evidence it clearly appeared that the person who solicited plaintiff to become a member, and filled out a blank application for membership, was the agent of defendant association, for whose misstatements therein it, and not plaintiff, was responsible.

On Rehearing.

**Question not raised below will not be considered here.**

The question of a departure in the reply from the cause of action set out in the complaint, not having been properly raised in the trial court, will not be considered on appeal.

Appeal by defendant the National Masonic Accident Association of Des Moines, Iowa, from an order of the District Court of Hennepin County, *Henry G. Hicks*, J., made September 22, 1893, denying its motion for a new trial.

The plaintiff, Edwin C. Whitney, was insured June 2, 1890, by defendant. He was fifty six years old and was treasurer of the Mississippi & Rum River Boom Company and engaged in official duties in its offices in Lumber Exchange Building, Minneapolis, and in travelling for it. By the policy it agreed to pay him $25 per week for a period not exceeding fifty two consecutive weeks in case he should be incapacitated for business by external, violent and accidental means. But the indemnity was not to exceed the sum realized by an assessment of two dollars upon each of the members at the date of the accident. Plaintiff's foot was frozen fifteen years before while out on snow shoes in the northern part of the state and his little toe and the one adjoining on his left foot were amputated together with about an inch of the bone back of the little toe. From this time there was on the outer or left side of that foot a lack of sensibility. It was less sensitive to heat and cold.

L. E. Crane, defendant's agent, came to plaintiff's office about June 1st, 1890, and asked him to take an accident policy. He read to plaintiff the application for membership and plaintiff answered all the questions he asked, made to him a full statement of the condition of his left foot, that there was numbness about it, and the cause of its condition and how it occurred. Crane said that it was of no consequence. He filled up the blank application and the plaintiff signed it. It contained this statement, "I have never had nor am I subject to fits, disorders of the brain or any bodily or mental infirmity except as herein stated." There was no statement in the application regarding his foot and plaintiff knew there was not.

This application was forwarded to the home office and the defendant made and forwarded to the plaintiff the certificate sued on. One of its terms provides, "This insurance does not cover disappearances nor injuries of which there is no visible mark upon the body; nor accident, or disability resulting wholly or in part, di-

rectly or indirectly, from any of the following causes, or while so engaged or affected: disease or bodily infirmities."

On January 28, 1891, plaintiff was riding north on the St. Paul and Duluth Railroad from Minneapolis to North Pacific Junction. He sat next the window of the car playing cards. The weather was cold and the steam heating pipes under the seat were hot. The outer or left side of his left foot came in contact with the steam pipes and was seriously burned before plaintiff was aware of the injury he was receiving. He was thereby incapacitated for business for seventeen weeks and four days. He made and served proofs of his injury and loss. The claim was disputed and he appointed an arbitrator and the defendant appointed another, but the two were unable to agree upon a third and the arbitration failed. Plaintiff then brought this action. At the first trial the court dismissed the action, but on appeal the judgment was reversed. *Whitney* v. *National Masonic A. Ass'n*, 52 Minn. 378. At the second trial plaintiff obtained a verdict for $485.53. Defendant moved to set it aside and for a new trial. Being denied it appeals.

*Clark Varnum*, and *F. A. Gilman*, for appellant.

It must be assumed from the record that plaintiff, at the time of his application and of the issuance of the certificate, had a bodily infirmity within the terms of the policy. He cannot recover unless he can avoid the provisions of the contract of insurance, as stated in the certificate or policy. He seeks to avoid the restriction in the policy by showing that he told Crane at the time of making the application all the facts in the matter as to his infirmity. He offered no proof as to the agency of Crane, by virtue of which alone such evidence would be competent. *Gude* v. *Exchange Fire Ins. Co.*, 53 Minn. 220; *Quinlan* v. *Providence W. Ins. Co.*, 133 N. Y. 356. There is a total failure to show any agency of the man Crane, and for this reason alone the court should have granted a nonsuit. The plaintiff knew that Crane refused to write any statement of plaintiff's then true condition in the application; knew that Crane had no right to issue policies; knew that the application must be forwarded to the defendant for approval by its secretary and the issuing of the certificate; and knew that the certificate must

be issued upon the statements contained in the application. He knew, what the association did not know, that he had a bodily infirmity and was not an insurable risk. *Johnson* v. *Dakota F. & M. Ins. Co.*, 1 N. Dak. 167; *New York Life Ins. Co.* v. *Fletcher*, 117 U. S. 519; *Smith* v. *Insurance Co.*, 24 Pa. St. 320; *State Mut. Fire Ins. Co.* v. *Arthur*, 30 Pa. St. 315; *Bartholomew* v. *Merchants Ins. Co.*, 25 Ia. 507; *Ryan* v. *World Mut. Life Ins. Co.*, 41 Conn. 168; *Grattan* v. *Metropolitan Life Ins. Co.*, 92 N. Y. 274.

The point decided in Kausal v. Minnesota Farmer's M. F. Ins. Ass'n, 31 Minn. 17, was that parol testimony that an applicant for insurance stated the facts correctly to the agent taking his application, but that the latter without the knowledge of the insured misstated them in filling out the application, is admissible. *Alabama Gold Life Ins. Co.* v. *Garner*, 77 Ala. 210; *Grattan* v. *Metropolitan Life Ins. Co.*, 92 N. Y. 274; *Columbia Ins. Co.* v. *Cooper*, 50 Pa. St. 331; *Key* v. *Des Moines Ins. Co.*, 77 Ia. 174.

Where an agent perpetrates a fraud on the assured by falsely filling up the application after it is signed, the assured is allowed to recover, because he is the party defrauded and has been induced to sign a paper in blank and it has been falsely written or forged over his signature. Nothing of that kind obtains in this case. If there was any fraud perpetrated at all, it was the fraud of the plaintiff himself in signing a statement fully written out and completed which he knew, or if he did not know was bound to know was untrue. It is conceded and not disputed that the statement in the plaintiff's application that he had no bodily infirmity is false, and the plaintiff's evidence conclusively shows that this application containing this statement was fully completed ready for his signature when he signed it.

The statement being untrue in point of fact it avoids the certificate, whether such untruth originated in fraud or mere negligence or want of recollection. If plaintiff did not read the application it was a gross want of care and was negligence in the highest degree, and plaintiff can claim no benefit on account of it. *Quincy* v. *Shearer*, 56 Minn. 534; *State Mut. F. Ins. Co.* v. *Arthur*, 30 Pa. St. 315; *Vose* v. *Eagle L. & H. Ins. Co.*, 6 Cush. 42; *Wilson* v. *Conway Fire Ins. Co.*, 4 R. I. 141.

*A. B. Jackson*, and *J. B. Atwater*, for respondent.

There was sufficient evidence of Crane's agency. *Abraham v. North German Ins. Co.*, 40 Fed. Rep. 717; *Rochford Ins. Co. v. Boirum*, 40 Ill. App. 129; *Hahn v. Guardian Assurance Co.*, 23 Oregon 576; *Gosch v. State Mut. Fire Ins. Ass'n*, 44 Ill. App. 263; *Capital City Ins. Co. v. Caldwell*, 95 Ala. 77; *Phoenix Ins. Co. v. Spiers*, 87 Ky. 285.

An authorized solicitor for insurance is the agent of the insurance company and not of the assured. The policy is not vitiated in the absence of fraud on the part of the assured by incorrect statements in the application, whatever may be the provision of the policy making the application a part of it, or statements of the assured warranties, if the actual facts regarding the incorrect statement were correctly stated to the solicitor, or even if he in the absence of such statement had actual knowledge of such facts. *Follette v. Mutual. Acc. Ass'n*, 110 N. C. 377; *Dupree v. Virginia Home Ins. Co.*, 93 N. C. 237; *Hornthal v. Western Ins. Co.*, 88 N. C. 71; *Jamison v. State Ins. Co.*, 85 Ia. 229; *Key v. Des Moines Ins. Co.*, 77 Ia. 174; *Donnelly v. Cedar Rapids Ins. Co.*, 70 Ia. 693; *Jordan v. State Ins. Co.*, 64 Ia. 216; *Insurance Co. v. Williams*, 39 Ohio St. 584; *Union Ins. Co. v. McGookey*, 33 Ohio St. 555; *Deitz v. Providence W. Ins. Co.*, 31 W. Va. 851; *Tarbell v. Vermont Mut. Fire Ins. Co.*, 63 Vt. 53; *Ring v. Windsor Co. Mutual F. Ins. Co.*, 51 Vt. 563; *Continental Ins. Co. v. Pearce*, 39 Kan. 396; *Phoenix Ins. Co. v. Weeks*, 45 Kan. 751; *Continental Life Ins. Co. v. Chamberlain*, 132 U. S. 304; *Insurance Co. v. Wilkinson*, 13 Wall. 222; *Insurance Co. v. Mahone*, 21 Wall. 152; *New Jersey Mut. Life Ins. Co. v. Baker*, 94 U. S. 610; *Menk v. Home Ins. Co.*, 76 Cal. 50; *Crouse v. Hartford F. Ins. Co.*, 79 Mich. 249; *Temmink v. Metropolitan Life Ins. Co.*, 72 Mich. 388; *Renier v. Dwelling House Ins. Co.*, 74 Wis. 89; *O'Brien v. Home Ben. Soc.*, 117 N. Y. 310; *Miller v. Phoenix Mut. Life Ins. Co.*, 107 N. Y. 292; *Andes Ins. Co. v. Fish*, 71 Ill. 620.

The true distinction between *Kausal v. Minnesota F. M. F. Ins. Ass'n*, 31 Minn. 17, and those cases which hold a different doctrine is in the different views of the courts as to the authority of the soliciting agent. Cases could be cited from Missouri, Maine, Texas,

Connecticut, New Jersey, Pennsylvania, New York and perhaps from a few other states which hold a different doctrine from the *Kausal Case* and those above cited; but all these courts hold that the insurance company can by proper clauses in the application or in the policy limit the authority of the soliciting agent so that his acts in filling out the application are not binding on or imputable to the insurance company. But this doctrine is distinctly repudiated in the *Kausal Case* and is not the law of this state. And where this doctrine does not prevail it seems clear on logical principles that the general rule which we have above stated must hold good. For while it is true that in a certain sense the assured is bound to know the contents of the application which he signs, yet his negligence in this respect is outweighed by the paramount duty of the insurance company not to mislead him or induce this negligence by any act on its part or that of its agent.

The force of this distinction will be observed by comparing *New York Life Ins. Co.* v. *Fletcher*, 117 U. S. 519, with *Continental Life Ins. Co.* v. *Chamberlain*, 132 U. S. 304. Upon facts which were in all essential respects identical, the court held in the first case that the assured could not recover because the insurance company was not bound by the acts of its solicitor; and in the second case it held that he could recover because the insurance company was bound by those acts.

The decisions cited by defendant are not binding as precedents in this state because made by courts which differ from the *Kausal Case* in regard to the limits upon the authority of a soliciting agent.

The fact that plaintiff received and accepted the policy with a copy of the application on the back of it imposed no new liability on him requiring him to examine the application and to see that any mistakes are corrected. The point is directly passed upon in *Donnelly* v. *Cedar Rapids Ins. Co.*, 70 Ia. 693; *Renier* v. *Dwelling House Ins. Co.*, 74 Wis. 89.

COLLINS, J. The defendant is a mutual benefit association organized under the laws of the state of Iowa for the purpose of indemnifying its members by payments in money on account of accidents occurring to them, the necessary money being raised solely

by assessments upon the members.  This plaintiff became a member in June, 1890, and brought this action to recover the stipulated weekly indemnity for seventeen weeks and four days, because of an accident which befell him in January, 1891.  The case has been here before.  52 Minn. 378, (54 N. W. 184.)

The association, at the second trial, resisted payment solely upon the ground of an alleged fraud committed by plaintiff when making application for membership.  This application was made out and taken by one Crane, said to be defendant's agent, and contained the following statement or warranty: "10. I have never had * * * any bodily or mental infirmity;" and in the certificate of membership forwarded to plaintiff in due season after the association received the application was the following condition: "This insurance does not cover * * * nor accident, nor death or disability resulting wholly or in part, directly or indirectly, from any of the following causes, or while so engaged or effected: suicide, * * * disease or bodily infirmities."

It was claimed and conceded that, many years before making the application, plaintiff had so frozen one of his feet that two of his toes and part of the bone back of the little toe had been removed. The result was a numbness in that member, and through this numbness the accident on which plaintiff relied as a cause of action resulted.  For the purposes of this discussion it must be taken for granted that the accident in question would not have occurred had there been no previous injury to the foot, and, further, that, within the terms and conditions of the application and certificate, the injury, with its result, amounted to a bodily infirmity.  As has been made to appear hereinbefore, the fact that plaintiff had received such an injury was not stated in the application.  This brings us to the principal points made by defendant association on appeal from an order denying its motion to vacate and set aside a verdict in plaintiff's favor, and for a new trial.

1. The rules which were laid down in this court in *Kausal* v. *Minnesota Farmers M. F. Ins. Ass'n*, 31 Minn. 17, (16 N. W. 430,) controlling in cases similar to this, need not be repeated here. Counsel for defendant association do not openly attack their correctness, but, with frequent allusions to the "fraud perpetrated by plaintiff when he signed an application in which he omitted

to state that his foot had been frozen many years before, that a small part of it had been amputated, and that the balance was more or less numb," they attempt to distinguish this case on the facts from that. The charge of fraud, as found summed up at one place in the brief, omitting counsel's italics, is thus put: "In this case Mr. Whitney says he stated the facts to the agent; the agent notified him that he would not write them down, and that he would write in an answer which the plaintiff knew to be false." Now, let us examine the undisputed testimony,—that of the plaintiff,—and see if there is anything tending to sustain the claim that he so actively and fraudulently co-operated with the alleged agent in withholding the facts from the association. Mr. Whitney testified that Crane "read the application over to me, and I answered all the questions he asked me. I made a full statement to him as to the condition of my foot,—the cause, etc. He said that it was of no consequence. I stated fully that it was injured by a frostbite, and from an injury received on snowshoes; that two toes and part of the bone back of the little toe were amputated, and sometimes there was numbness about it." In response to a further question, he said: "What I read here,—number 10,—I remember that he read it to me, and I answered as I have given you. I never read this document until now." Crane filled out the blank himself as plaintiff answered the questions. The latter knew that it purported to be an application for membership, but did not read it. There is nothing whatever in the evidence tending to indicate that plaintiff participated in the alleged misstatements, or had any knowledge of them. Certainly, knowledge of what Crane was doing, and that he was concealing the real facts, cannot be imputed to plaintiff from Crane's remark, when informed of the frozen foot and partial amputation, that "it is of no consequence." If plaintiff could draw any inference from this remark it was that such an infirmity would not influence the officers of the association whose duty it was to pass upon the application, or have any injurious effect in its consideration. We are clearly of the opinion, after an examination of the evidence, that, if misstatements were made and a fraud perpetrated upon the association when the blank application was filled out, Crane was responsible, not the plaintiff. If, then, it was shown on the trial that Crane was an agent of the defendant

association, the case is governed by the *Kausal Case*, in which it was held, among other things, that where an agent to procure and forward applications for insurance, either by his direction or direct act, makes out an application incorrectly, notwithstanding all the facts are correctly stated to him by the applicant, the error is chargeable to the insurer, and not to the insured. In conclusion upon this point, we will say that counsel for ~laintiff, respondent here, have collected and cited in their brief a great number of cases in line with *Kausal* v. *Minnesota Farmers M. F. Ins. Ass'n, supra,* and in which the rules there laid down have been sanctioned and applied.

2. Relying upon the case of *Gude* v. *Exchange Fire Ins. Co.,* 53 Minn. 220, (54 N. W. 1117,) defendant contends that the agency of Crane was not sufficiently established. On the answer we do not think this claim open to defendant, for the acts of Crane in obtaining the application were therein adopted. Again, in its tenth request to charge, the defendant expressly assumed that Crane was its agent, and based its request upon the fact. Further, Crane solicited plaintiff to become a member of defendant association, pretending to be its agent, and produced and filled out the application, which was sent to the association, acted on by it when it issued the certificate, and the certificate was sent by it to Crane, who delivered it to plaintiff, and collected the premium. These facts easily distinguish this case from *Gude* v. *Exchange Fire Ins. Co., supra,* and we think there was sufficient evidence of the agency of Crane. *Abraham* v. *North German Ins. Co.,* 40 Fed. 717; *Hahn* v. *Assurance Co.,* 23 Oregon 576, (32 Pac. 683;) *Gosch* v. *Association,* 44 Ill. App. 263; *Pierce* v. *The People,* 106 Ill. 11; *Deitz* v. *Providence-Washington Ins. Co.,* 31 W. Va. 851, (8 S. E. 616;) *Insurance Co.* v. *Williams,* 39 Ohio St. 584; *Packard* v. *Dorchester Mut. Ins. Co.,* 77 Me. 144; *Stone* v. *Hawkeye Ins. Co.,* 68 Iowa, 737, (28 N. W. 47.) In fact, there seems to be, practically, unanimity in the cases on this point.

There is nothing in the other questions raised by the assignments of error. Order affirmed.

BUCK, J., absent, took no part.

## On Application for Reargument.

July 9, 1894.

PER CURIAM.   In a petition for reargument, counsel for appellant urge that this court overlooked the assignment of error whereby it was claimed that in the reply there was a clear departure from the cause of action set forth in the complaint.   Should it be admitted that there was, the point was not properly made upon the trial below.

It is also urged that as it was distinctly held upon the trial that plaintiff was bound to know, and was held to have known, the contents of the application for membership, this court erred in applying the rule of the *Kausal Case*, 31 Minn. 17, (16 N. W. 430.)   The decision does not proceed upon the theory, as counsel seem to think, that plaintiff can recover because, although he truthfully stated the facts to the agent, the latter, without plaintiff's knowledge, falsely answered the questions found in the application, but rather upon the theory that plaintiff was misled by representations of the agent as to the character or effect of his answers to the question concerning a bodily infirmity.   The rule in the *Kausal Case* applies, assuming, of course, good faith on the part of the insured, and the absence of collusion between him and the agent; and, using language found in Wood on Insurance (section 407): "to mistakes arising from the misadvice of the agent or his misconception of the legal effect of certain conditions," the petition is denied.

(Opinion published 59 N. W. 943.)