## NEW HAMPSHIRE FIRE INSURANCE COMPANY *v.* WALL.

[No. 5,201.   Filed October 10, 1905.]

1. APPEAL AND ERROR.—*Want of Parties.*—Where an appeal is taken without bringing a coparty before the court no action will be taken affecting such coparty's interest.   p. 242.

2. PLEADING.—*Motion in Arrest.*—*Motion for New Trial.*—A motion in arrest of judgment cuts off the right to a motion for a new trial except for after-discovered causes.   p. 243.

3. NEW TRIAL.—*Not Grantable for Part of Case.*—Where issues were formed upon a complaint on a draft and a cross-complaint for the cancelation of same a new trial can not be demanded separately for the issues on such complaint and cross-complaint. p. 243.

4. JUDGMENT.—*Motion for, on Answers.*—Where issues were formed on a complaint on a draft and cross-complaint for the cancelation of same, a motion for judgment *non obstante* on the answers on the issues formed on the complaint should be overruled, such practice resulting in confusion.   p. 244.

5. ESTOPPEL.—*Insurance.*—*Ownership.* — *Settlement.* — A settlement between an insurance company and the "Crawfordsville Sanitarium" for a loss estops such company, in the absence of fraud, from denying that the one to whom it gave its drafts in settlement was the real party in interest.   p. 247.

6. EVIDENCE.—*Ownership.*—*Insurance.*—*What Admissible Under Allegation that Plaintiff is "Owner."*—Under an allegation that plaintiff was the "owner" of property covered by a fire policy, plaintiff may prove what interest he had, if any.   p. 247.

New Hampshire Fire Ins. Co. *v.* Wall—36 Ind. App. 238.

7. INSURANCE.—*Policy Issued to "Crawfordsville Sanitarium."*— *Validity.*—A policy of fire insurance issued to the "Crawfordsville Sanitarium" is valid.  p. 247.

8. SAME.—*Separable Owners.*—A policy of fire insurance issued to two or more persons upon property held by them separately is valid.  p. 247.

9. SAME.—*Beneficiaries.*—*Settlement.*—Where a fire policy was issued to the "Crawfordsville Sanitarium" and after loss the company settled by drafts with the owner thereof, in the absence of fraud, it could not defend against payment of such drafts on the ground that at the time of the issuance of the policy the property was owned by two persons separately, where it is shown that the company knew of such facts when the settlement was made.  p. 248.

10. SAME.—*Breach of Warranty.*—*Settlement.*—*Effect of.*—The settlement of liability under a fire policy, in the absence of fraud, cuts off any right of defense on the ground of a breach of warranty.  p. 249.

From Montgomery Circuit Court; *Jere West,* Judge.

Action by Henry V. Wall against the New Hampshire Fire Insurance Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Chambers, Pickens, Moores & Davidson, Owen Pickens* and *Claude Thompson,* for appellant.

*Charles Johnston, Will H. Johnston* and *Oliver U. Perrin,* for appellee.

BLACK, J.—The appellee's complaint consisted of four paragraphs, to each of which the appellant demurred for want of sufficient facts. The demurrer was sustained as to the first two paragraphs, and was overruled as to the third and fourth paragraphs. In the third paragraph it was alleged that the appellant, by its policy of insurance numbered 1,479,429, and dated October 8, 1902, in consideration of $7.50, insured the Crawfordsville Sanitarium against loss or damage by fire, to the amount of $300, for the term of one year, commencing on the 8th day of October, 1902, at noon, and ending on the 8th day of October, 1903, at noon, on the surgical instruments, medical books, bookcases,

desks, and all other articles used in sanitariums of this kind, while contained in the two-story frame, brick veneered, metal-roof building situated at No. 223 and 225 East Main street, Crawfordsville, Indiana, then occupied by said sanitarium, and permitted other insurance thereon; that on the 26th day of December, 1902, the greater portion of said sanitarium property was entirely destroyed by fire, and the remainder thereof burned, injured and damaged, all to the amount of $———— of which the appellant was duly notified on the —— day of December, 1902; that said sanitarium property was of the value of $3,671; that the appellee effected other insurance upon said sanitarium property in the sum of $1,700, as permitted by the terms of said policy; that the appellee had performed all the conditions on his part to be performed; that January 7, 1903, the appellant, by its authorized representative, met the appellee in said city and agreed upon the total amount of loss or damage to said sanitarium property, in the sum of $1,496.90, and "became and is indebted" to him in the sum of $224.54, that being three-twentieths of the whole amount of said loss or damage, and the proportion which $300, insured by said policy, bears to the whole amount of insurance upon said sanitarium property; that the appellee and one Harry J. Helfrich were the owners of said sanitarium property at the time said policy was issued and at the time the same was destroyed and damaged by fire on December 26, 1902; that on the —— day of January, 1903, said Helfrich, for a valuable consideration, sold to the appellee all his claim for loss to said property under said policy; that March 10, 1903, the appellant, in settlement of said loss and cancelation of said policy, delivered to the appellee, at Crawfordsville, Indiana, its draft, dated Manchester, New Hampshire, March 3, 1903, for the sum of $224.54, at sight, payable to the order of Crawfordsville Sanitarium; that thereupon the appellee delivered to the appellant said policy, which is now in its possession and an-

nulled by it; that March 17, 1903, said draft was presented to the appellant at Manchester, New Hampshire, for acceptance, and acceptance thereof demanded and refused, and it was then and there protested for nonacceptance; that March 20, 1903, it was presented to appellant for payment, and payment thereof demanded and refused, and it was then and there protested for nonpayment; that in March, 1903, said draft was returned to appellee, with notice of nonacceptance and nonpayment and of protest therefor; that the appellee is entitled to five per cent damages upon said protested draft, and to exchange and protest damages thereon, and to lawful interest upon the sum of $224.54 from March 20, 1903; that said amount is now due upon said draft and wholly unpaid; and that the appellant, by its neglect, refusal and failure to pay its indebtedness and draft, as alleged, has damaged the appellee in the sum of $224.54, accrued interest thereon and exchange and protest charges and five per cent damages upon said draft, all of which is now past due and wholly unpaid. Said Harry J. Helfrich was made a party defendant to answer to whatever interest he might have in the premises. Prayer for judgment, etc.

The fourth paragraph was like the third, except that it declared upon a draft for a different amount—$374.22—alleged to have been given for loss caused by the same fire in settlement of another policy of a different number, issued by the appellant November 12, 1902, for $500 on the same property. The two drafts were made exhibits, being alike except as to amounts and as to the numbers of the policies mentioned therein; that declared upon in the third paragraph of complaint being as follows: "$224.54. Manchester, New Hampshire, March 3, 1903. At sight pay to the order of Crawfordsville Sanitarium the sum of $224.54, in full for claim under policy No. 1,479,429, issued at Crawfordsville, Indiana, agency, as per receipt attached. F. E. Martin, A. Secy."

The appellant answered in three paragraphs, the first a general denial, and filed a cross-complaint against the appellee and Helfrich, praying that the drafts be canceled, that the settlement be set aside, and that the policies of insurance be declared void. The appellee replied to the second and third paragraphs of answer, and the appellant and Helfrich answered the cross-complaint by general denial, and Helfrich answered the complaint of the appellee, alleging that he then had no interest in the matters in controversy as therein set out. There was a trial by jury, and a general verdict was returned for the appellee in the sum of $628.11. The appellant moved "for a new trial herein on the issues joined on the complaint." This motion having been overruled, the appellant moved in arrest of judgment upon the verdict. Having overruled this motion, the court rendered judgment for the appellee against the appellant for the amount of the verdict and for costs. The court then found and rendered judgment that the appellant take nothing by its action on the cross-complaint, and that the defendants to the cross-complaint recover their costs and charges thereon laid out and expended. The appellant then moved for a new trial on the issues joined on the cross-complaint, assigning the same reasons as those set forth in the former motion for a new trial. This motion, having been overruled, the appellant prayed for and was granted an appeal to this court.

Among the alleged errors for which and for each of which the appellant prays that "the judgment of the Montgomery Circuit Court be in all things reversed," are the rulings upon the two motions for a new trial which are separately assigned as errors.

1. One of the parties defendant to the cross-complaint, in whose favor judgment was rendered for costs (Helfrich), is not a party to the appeal, and we could not take any action adverse to his interests.

It is a rule of practice in this State that a motion in arrest of judgment cuts off the right to move for a new trial,. except where the grounds for a new trial are

2.    unknown when the motion in arrest is made. *Eckert v. Binkley* (1893), 134 Ind. 614; *Cincinnati, etc., R. Co.* v. *Case* (1890), 122 Ind. 310. The determination of the issues tried together involved a result adverse to the appellant upon the cross-complaint if adverse to it upon the complaint. The cross-complaint, in fact, set forth only defensive matter of alleged fraud in the settlement of the loss.

It has been held that one who desires a new trial must seek it as to the whole case, and that the court can not grant a new trial as to a part of the case only. *Johnson*

3.    v. *McCulloch* (1883), 89 Ind. 270. In that case it was held that the overruling of a motion by a defendant for a new trial upon his paragraphs of counterclaim and set-off presented no question for decision on appeal. The court could not properly grant a new trial of the issues formed upon the complaint, and also render judgment for or against the appellant upon the cross-complaint. All the rights of the appellee involved in the case were not included in the issues formed on the complaint. He also was interested in the issues formed on the cross-complaint against him and Helfrich, and his interest in the matter involved in the cross-complaint was so related to or identical with those involved in the issues on the complaint that it would not avail him to try again the issues on the complaint, if the issues formed on the cross-complaint were found and adjudged against him. See *Bennett* v. *Closson* (1894), 138 Ind. 542, 548; *State, ex rel.,* v. *Templin* (1890), 122 Ind. 235; *Bisel* v. *Tucker* (1889), 121 Ind. 249; *Louisville, etc., R. Co.* v. *Miller* (1895), 141 Ind. 533. The court was not bound to grant a new trial as to a part of the case, and there could be no error in the overruling of either of the two motions for a new trial.

Two sets of interrogatories with answers were returned by the jury. The record represents one set as consisting of interrogatories submitted to the jury "for them to answer." Immediately following in the record are interrogatories, with answers thereto, purporting to be interrogatories submitted to the jury by the court upon the issues joined upon the cross-complaint. The appellant's motion for judgment in its favor "on the answers to the interrogatories in the above-entitled cause on the issues framed on the complaint herein, notwithstanding the general verdict," was overruled. If it may be said that the record shows the return of answers to interrogatories as described in this motion, much of what we have said concerning the motions for a new trial is not inapplicable here. The appellant could not be entitled to a judgment which would leave an essential part of the case undisposed of, or to any final judgment which would not dispose of all the issues between the appellant and the appellee relating in effect to the same cause of action. Such a disposition of causes would result in inextricable confusion. The court was asked to render judgment contrary to the general verdict upon a portion of the answers returned, ignoring others, which, in the matters to which the interrogatories of the first set related, showed affirmatively the good faith of the insured in the taking of the insurance and in the settlement of the loss.

The assignment of error based upon this ruling is essentially an attack upon a part of the final judgment, from which the appeal is taken, as are also the assignment of error in overruling the motion in arrest of judgment, and the several assignments relating to the overruling of the motions for a new trial.

No question has been made here as to the failure to make Helfrich a party to the appeal. The question as to the sufficiency of the third and fourth paragraphs of the com-

plaint and also the action of the court on the motion for judgment are discussed by counsel, and we shall give these questions attention. The answers to the questions in the first set of interrogatories do not show any fraud on the part of the appellee or Helfrich, either in the taking of the insurance or in the settlement of the loss on which the drafts in suit were executed. We shall seek out such findings as relate to other matters, which seem to illustrate the contention of the parties before us.

The appellee and Helfrich furnished to the appellant statements of articles and their value as the basis of their claim of loss. These were afterwards changed and amended, though not added to, but diminished, in amount. The total sound value of the property insured and listed by the appellee and Helfrich was $2,696.90. The total amount of loss and damage as stated in the proofs of loss by the appellee and Helfrich was $1,496.90. This was the total fair cash value at the time of the fire of all the property injured and destroyed or damaged by fire. The defendant insurance company had knowledge as to who composed the Crawfordsville Sanitarium at the time of the loss by fire. It was neither a corporation nor a partnership. Helfrich owned a portion of the surgical instruments, and the value of the property so owned by him at the time of the fire was $65. The remainder of the property in the sanitarium at the time of the fire, other than that owned by Helfrich, was owned by the appellee. On or about December 29, 1902, the appellee and Helfrich furnished the adjuster of the appellant a written statement of the amount of goods destroyed by fire, which showed the total value at $3,674.05. On or about January 6, 1903, they furnished the adjuster a detailed written statement of all said property from catalogue and memory, showing the same total value. January 7, 1903, they submitted to the company proofs of loss amounting to $1,496.90. March 3, 1903, the appellee is-

sued its drafts payable to the Crawfordsville Sanitarium "in payment" of its proportion of the loss under each of its policies.

The total amount of insurance held by the Crawfordsville Sanitarium on the property insured by the appellant at the time of the fire, was $2,000. The amount of the drafts drawn by the appellant "in settlement" of its proportion of this loss was $598.76. These drafts were delivered to the appellee March 3, 1903, and the appellant then took a receipt therefor. At the time of this delivery of the drafts "in the settlement of said loss," the appellant had, by its agent, information or knowledge of the amount and character and value of the property destroyed by fire, other than such information as had been given to it and its agents by the appellee and Helfrich.

Counsel remark concerning the third and fourth paragraphs of complaint, that they do not aver a partnership or a joint interest in the Crawfordsville Sanitarium, the allegation as to ownership being that "plaintiff and Harry J. Helfrich were the owners of said sanitarium property at the time said policy of insurance was issued and at the time said property was destroyed and damaged by fire on the 26th day of December, 1902," and that in January, 1903, Helfrich, for a valuable consideration, sold to the appellee all his claims for loss or damage to said sanitarium property under said policy, and thereafter, in March, 1903, the appellant in settlement of said loss and cancelation of the policy delivered to the appellee the drafts in suit, and Helfrich was made a defendant to answer as to his interest. It is said by the appellant in argument that the appellee is in no better position as plaintiff than he and Helfrich would have been if the suit were one brought by them jointly; and the appellant regards it as necessary to the sufficiency of the complaint that it should appear therefrom that a partnership existed between these persons.

The action was not one based upon the policies of insurance, which, upon the settlement, were taken up and canceled. It was an action upon the two drafts, by the giving of which, upon the settlement in payment of the loss, the appellant, in the absence of fraud, estopped itself from denying that those who composed the Crawfordsville Sanitarium were the real parties in interest. *Northwestern, etc., Ins. Co.* v. *Kidder* (1904), 162 Ind. 382, 66 L. R. A. 89; *Smith* v. *Bettger* (1879), 68 Ind. 254, 34 Am. Rep. 256; *Blacker* v. *Dunbar* (1886), 108 Ind. 217; *Sutton* v. *Baldwin* (1896), 146 Ind. 361; *Offutt* v. *Rucker* (1891), 2 Ind. App. 350. See, also, *Farmers Ins. Assn.* v. *Reavis* (1904), 163 Ind. 321; *Illinois Mut. Fire Ins. Co.* v. *Archdeacon* (1876), 82 Ill. 236, 25 Am. Rep. 313; *Smith* v. *Glens Falls Ins. Co.* (1875), 62 N. Y. 85.

In a complaint upon a policy of fire insurance, a general averment that the plaintiff, at the inception of the policy and at the time of the loss, was the owner of the property destroyed, is sufficient without further averment to admit evidence of any interest he may have had. *Phoenix Ins. Co.* v. *Rowe* (1889), 117 Ind. 202.

When the appellant issued a policy to the Crawfordsville Sanitarium, it may be supposed, in such a case as this, nothing to the contrary appearing, that it was not imposed upon as to the ownership of the property. It was not impossible to issue a valid policy to the owner or owners of property in such a name. See *Clark* v. *German Mut. Fire Ins. Co.* (1879), 7 Mo. App. 77. Nor would a policy necessarily be invalid because thereby the appellant contracted to insure property not owned by the insured jointly. If the persons insured held insurable interests, the fact that one of them was the sole owner of a portion of the property and the other was the sole owner of the remainder of the property would not necessarily invalidate the policy. Such separate interests may

be insured in one policy. *Manchester Fire Assur. Co.* v. *Glenn* (1895), 13 Ind. App. 365, 55 Am. St. 225; *Manchester Fire Assur. Co.* v. *Koerner* (1895), 13 Ind. App. 372, 55 Am. St. 231; *Monaghan* v. *Agricultural Fire Ins. Co.* (1884), 53 Mich. 238, 18 N. W. 797; *Northrup* v. *Phillips* (1881), 99 Ill. 449. See, also, *Kausal* v. *Minnesota, etc., Ins. Co.* (1883), 31 Minn. 17, 16 N. W. 430, 47 Am. Rep. 776.

It is admitted by the appellant that this may be so, if the separate interests are designated in the policy, or are known to the insurer at the time of the issuing thereof. The same effect certainly would follow from knowledge at the time of a settlement of the loss. It is specially found in the answers upon which the appellant asked for judgment, that the appellant knew who composed the Crawfordsville Sanitarium. It made a settlement with the insured. They made a number of statements, and furnished proof of loss, and the insurance company took up and canceled its policies, and it does not appear to have returned the premium. Even if, without fraud, it did not know of the several ownership at the time of issuing the policies, or at the time of the adjustment, yet, having settled with the insured, without any fraud on their part, requiring of them the furnishing of proofs of loss, and having taken up the policies, and retained and canceled them, and having given its drafts "in payment" of the loss, which were accepted in good faith, it can not avoid the payment of the drafts merely because of the fact of such several ownership, concerning which there does not appear to have been at any time any fraud or misrepresentation on the part of the insured, or any failure to make truthful disclosure of the interests or titles of the insured. It may, indeed, have been true, without inconsistency with the complaint or the answers to interrogatories in question, that the appellant or its authorized agents knew of the condition of the

New Hampshire Fire Ins. Co. v. Wall—36 Ind. App. 238.

title to the insured property at the time of adjustment and the execution of the drafts in suit and at the date of the issuing of the policies.

In *Castner* v. *Farmers Mut. Ins. Co.* (1881), 46 Mich. 15, 8 N. W. 554, the plaintiffs, mother and son, sued upon a policy of insurance issued to them jointly on a dwelling and personal property contained in it, both of which were destroyed by fire. The son owned the fee, subject to his mother's life interest. The personal property was owned in severalty; the son's property being the larger part. One defense was that the property was not joint. It was by the court regarded as not necessary that the precise nature of the interest should appear in the application or policy, unless distinctly required; that when the entire property belongs to the persons insured it can make no necessary difference to the insurer in what way their interests are apportioned; and that, if the company deems it material, it should inform the applicant before accepting his money. See, also, *Guest* v. *New Hampshire Fire Ins. Co.* (1887), 66 Mich. 98, 33 N. W. 31; *German Mut. Ins. Co.* v. *Niewedde* (1895), 11 Ind. App. 624, 627.

In *Smith* v. *Glens Falls Ins. Co.* (1875), 62 N. Y. 85, 87, it is said: "The objection that there was a breach of warranty as to title and incumbrances is not available. * * * The settlement and contract to pay a specified sum operates as a waiver of any warranty in the policy unless the settlement and contract were procured by the fraud of the assured, and this is not found and scarcely claimed. It is said that the company did not know of the breach of the warranty at the time of the settlement. The answer is, that when the claim was made for the loss the company was required to ascertain the facts as to any breach of warranty. If they saw fit to pay the claim, or compromise it, or to make a new contract without such examination, it must be deemed to have waived it,

and in the absence of fraud it can not afterward avail itself of such breach. It can not urge payment or settlement by mistake on account of a want of knowledge of such breach. The time for investigation as to breaches of warranty is when a claim is made for payment, and if the company elects to pay the claim, or, what is equivalent, to adjust it by an independent contract, it can not afterward, in the absence of fraud, retract or fall back upon an alleged breach of warranty." See, to the same effect, *Stache* v. *St. Paul, etc., Ins. Co.* (1880), 49 Wis. 89, 96, 5 N. W. 36, 35 Am. Rep. 772.

We do not find available error. Judgment affirmed.