## GREENWALD v. FORD.

In an action by a bank to recover money paid by it on an alleged forged check, it appeared that the body of the check was in the handwriting of the payee. Experts testified that the signature of the check was a forgery, and the alleged maker denied signing it. There was no contradictory evidence. **Held** to establish forgery of the check as a matter·of law.

Where it would be the duty of the court to set aside a verdict in favor of a party asking for the submission of the case to the jury, the court properly withheld it from the jury and directed a verdict for the adverse party.

Where, on the issue of the forgery of a check, the undisputed testimony established the forgery, without a reference to checks subsequently written and introduced in evidence for the purpose of comparison, the error in admitting in evidence the subsequent checks was not reversible.

The fact that a signature offered in evidence as a standard for comparison was made since the time of the signature in dispute may be considered as affecting its credibility; but it will not justify a denial of its use, unless it is shown that it was manufactured since the controversy arose, for the purpose of comparison, by one having a motive to fabricate.

In an action by a bank for money paid on a forged check, defendant testified that he received the check as security for a loan from a comparative stranger, whom he supposed was a gambler, and that he did not know or make any inquiry as to the alleged signer of the check, the body of which was written by the same person who wrote the name of the payee on the back thereof. The check was deposited with a bank for collection. The check bore the indorsement of the alleged payee and defendant, and the bank guarantied the previous indorsements. The bank receiving the check for collection as agent of defendant was advised of the forgery several days before forwarding to the alleged payee a certificate of deposit for the amount thereof. It was not shown that the certificate of deposit received from the collecting bank had ever been paid. Defendant had received the money loaned to the alleged payee befoer the certificate was forwarded to him. **Held,** that since Rev. Civ. Code, § 1687, providing that as against a principal both principal and agent are deemed to have notice of whatever either has notice, etc., defendant must be deemed to have

had notice of the forgery before the transmitting of the certificate of deposit to the alleged payee of the check, rendering him liable for the repayment thereof.

A bank paying a check has a right to rely on the indorsements thereon, where one transmitting it to the bank for payment guaranties the indorsement, and the bank supposes that the check is going through the regular course.

(Opinion filed, October 30, 1906.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by W. A. Greenwald against G. A. Ford and another. From a judgment for plaintiff, defendant Ford appeals. Affirmed.

Joe Kirby, for appellant. Boyce & Warren, for respondent.

FULLER, P. J. This action, against G. A. Ford and the State Banking & Trust Company of Sioux Falls, was to recover $475 alleged to have been paid to them August 15, 1904, by plaintiff's assignor, the Farmers' State Bank of Preston, Neb., on a forged check purporting to have been drawn in favor of L. C. Gibson, or bearer, by E. Hoselton, whose checks the bank had full authority to pay and charge to the account of his employer, W. A. Margrave. Without introducing any evidence on the part of the defense or cross-examining respondent's witnesses, and after both parties had rested, a motion was made for the direction of a verdict in favor of the defendants, on the ground that there is a failure of proof and that the facts in evidence do not correspond with the allegations of the complaint. Plaintiff having also moved that a verdict be directed in his favor against both defendants, the trial court announced that a verdict would be directed in favor of the State Banking & Trust Company, but in his opinion the defendant G. A. Ford was legally liable for the amount of the check. Thereupon counsel for defendants requested the court to let the jury determine, in response to a special interrogatory, whether such check, being Exhibit A, was forged; but this request was denied, and a verdict was directed, favorable to the State Banking & Trust Company and against the defendant Ford, for the full amount claimed by plaintiff.

On this appeal from a judgment accordingly entered and an order overruling a motion for a new trial, it is urged for a re-

versal that the question of forgery should have been submitted to the jury, and, as the State Bank of Preston was bound at its peril to know the signature of its customer, E. Hoselton, respondent, the assignee of said bank, would not be entitled to recover under any circumstances. Now the uncontroverted facts disclosed by the record are in substance as follows: The check in litigation was drawn on a blank check of the American National Bank of Kansas City, Mo., and through the entire name of such bank there are two parallel lines made with a pen and ink, and over this is written "Farmers' State Bank of Preston, Neb.," in the same handwriting as the body of the check, which is as follows: "Kansas City, Mo., Aug. 10, 1904. Pay to L. C. Gibson or bearer $475.00 Four hundred and seventy-five and 00|100 dollars. E. Hoselton." In the same handwriting as the body of this check, it is indorsed on the back "L. C. Gibson," and it also contains the indorsements "G. A. Ford" and "Pay any bank or banker, or order (all previous endorsements guaranteed). State Banking & Trust Co., Sioux Falls, S. D., F. H. Hollister, Cashier."

Appellant, Ford, called on the part of respondent, testified as follows: "I am one of the defendants. I received the check, Exhibit A, from this man L. C. Gibson some time during the last carnival here, somewhere within a few days of its date, I think. I do not know that I paid anything for it. I advanced him some money. I could not say whether it was the night before I received the check or the next morning. I gave him $50. He gave me the check to secure such sum. I indorsed and deposited it, and sent it through the bank, the State Banking & Trust Company, for collection. I could not say how long I had known Mr. Gibson. I had seen him around at different times, probably a month or two. I could not say whether or not I had met him more than twice, nor that I inquired concerning his business. I heard him speak of St. Paul, Minn., and supposed that was the place where he lived. I do not know Mr. Hoselton, and do not remember that I inquired of Mr. Gibson concerning him. It was somewhere within a day r two after I took the check that I deposited it. The bank took out $1 for collection and gave me a certificate for $474. I believe I was down in Sioux City or out in Bonesteel between the time I

made the deposit and received the certificate. I do not remember, how long I was away; maybe somewhere about a week. When I got home I got the certificate, put it into my safe, and afterwards sent it to Kansas City to this man Gibson. I did not deduct anything therefrom, as he had already sent me a draft for the $50 I advanced him. At the time he gave me the check he told me I could take out what was coming and send him the balance of the money; but when I came home I found a draft had been sent me from Homer, Neb., with a letter thanking me for the favor. A few days later after I returned home I got a postal card from Kansas City, from him, asking me to forward the balance of the money. The certificate of deposit was in my safe for some days. I sent it to Kansas City, general delivery. I have not seen nor heard of Mr. Gibson since that time, and do not know where he is. I supposed he stopped at the Cataract while in Sioux Falls, as I met him there nights. I am in the saloon business. I do not know whether Mr. Gibson did any gambling while in Sioux Falls. I suppose he did, as he was around with people who played games. * * * No one introduced me to Mr. Gibson that I remember of. No; I could not swear that I know, in fact, whether he was L. C. Gibson, or whether that was his true name."

The testimony of F. H. Holister, cashier of the State Banking & Trust Company, shows that when he received the check for collection he did not know L. C. Gibson or his signature; that he paid G. A. Ford nothing for the check in the way of credit or otherwise, although it contained his indorsement and he was a customer of the bank, considered responsible. This check, thus deposited for collection some time between the 10th and 15th day of August 1904, was sent directly to the Farmers' State Bank of Preston, Neb., where it was paid by draft, marked Exhibit B at the trial, and the amount was charged to the account on which E. Hoselton had authority to draw. Shortly after such remittance reached Mr. Hollister's bank, and as soon as the forgery was discovered, he received a letter and the following telegram from the Farmers' State Bank of Preston: "Stop payment of draft No. 3,212. Hoselton's check forgery." Mr. Hollister testified without objection that he received this telegram, the original of which had at the time of the

trial been destroyed in the telegraph office from which it was sent, and it was entirely proper to let the officer of the bank, who not only dictated the same to the operator, but read and signed it, testify as to its contents.

By way of deposition Clyde Thacker testified in respondent's behalf as follows: "Since June 1, 1904, I have been cashier of the Farmers' State Bank of Preston, Neb., a corporation. About August 15, 1904, the defendant State Banking & Trust Company presented to the said Farmers' State Bank the check, Exhibit A, by mail, for payment, with letters stating, 'We enclose for returns.' Exhibit A, when presented, had those indorsements on it. I paid Exhibit A by draft, Exhibit B, on St. Louis, which I sent on August 15th to the defendant State Banking & Trust Company. I had no notice or knowledge they were acting as agents for collection only. At that time I looked at the signature of E. Hoselton to Exhibit A, and thought it was genuine. Q. Upon what other evidence, if any, did you act in making payment of the check? A. Upon the indorsement of G. A. Ford and the State Banking & Trust Company. Q. Did you scrutinize the purported signature of E. Hoselton to this check as carefully as you would have done, had those indorsements not been upon the back of it? A. Well, I relied to a certain extent upon the indorsement of the bank. I supposed it was all right, going through the regular channel of a bank. I had no doubt whether of its being a regular transaction, but knew nothing about it. The draft, Exhibit B, was collected by the defendant State Banking & Trust Company and charged to our account. * * * The indorsement. 'L. C. Gibson' on the back of Exhibit A is in the same handwriting as the body of the check. I do not know the handwriting, and never had any knowledge of Mr. Gibson whatever. At the time I paid this check, Exhibit A, I was somewhat familiar with Mr. Hoselton's signature. Since then I have carefully examined the signature of Exhibit A, and have since frequently paid his checks, and I now know his signature. Q. Is that the genuine signature of E. Hoselton upon the check, Exhibit A? A. It is not. On August 19th I discovered that this check did not bear the genuine signature of E. Hoselton. The Farmers' State Bank then wired the State Banking & Trust

Company at Sioux Falls. * * * Mr. Hoselton did not have any money in his name at the time this check, Exhibit A, was paid. He checked against the account of W. A. Margrave, in whose name the money was kept. Mr. Margrave is a stock grower residing near Preston, and also president of this bank. Mr. Hoselton bought stock for him and drew checks on Margrave's account. Q. Are the five instruments I now show you genuine checks drawn upon such blanks by Mr. Hoselton upon the account of Mr. Margrave? A. Yes sir. The signatures of these five instruments are the genuine signatures of E. Hoselton. These instruments are checks drawn by Mr. Hoselton on the Farmers' State Bank on Mr. Margrave's account, and paid by the bank. (Plaintiff thereupon offers in evidence said five checks, marked, respectively, Exhibit E, F, G, H, and I. To this offer and each of said checks, the defendants object as incompetent, immaterial, and irrelevant, as such checks are of a self-serving character and tendency, are made long subsequent to this transaction in question, and bear earmarks of having been manufactured for the occasion. Which objection was overruled and to which ruling the said defendants then and these duly excepted.) * * * When exhibit A was paid it was charged to the account of W. A. Margrave, and when the forgery was discoverd it was charged back to the bank, and we credited Mr. Margrave's account with a like amount. Nobody has ever reimbursed the bank. Shortly after the discovery of this forgery Mr. L. W. Green, the former cashier, went to Sioux Falls. W. A. Greenwald of Falls City, Neb., is the owner of the claim in this action. It was assigned to him in writing by the Farmers' State Bank, which assignment is received in evidence. I have known E. Hoselton ten years, during all of which time he has been and now is in Mr. Margrave's employ."

On behalf of respondent, E. Hoselton testified by deposition in substance that the checks offered in evidence for comparison and payable to different persons and for different amounts, and which bear date, respectively, August 2 and 30, 1905, and September 7, 9, and 13, of that year, each contain his signature; that he did not sign, make, or deliver the check in controversy, and never knew L.

C. Gibson, and that the handwriting of the check, signature, and name "L. C. Gibson" on the back thereof were all unknown to him; that he had not paid the check, nor was it charged to the account of Mr. Margrave on which he had been authoritatively drawing checks for the last 15 years.

L. W. Green, testifying on behalf of respondent by way of deposition, stated that he was cashier of the Farmers' State Bank until June, 1904; that he was familiar with E. Hoselton's signature, and that in his opinion the checks, Exhibits E, F, G, H, and I, bore the genuine signature of Mr. Hoselton, but that in his opinion Exhibit A did not; "that he resided at Reserve, Kan., and was engaged in farming; that he gave up his position as cashier in the Farmers' State Bank in June, 1904; that during the time he was cashier he had paid numerous checks drawn by Mr. Hoselton on the account of Mr. Margrave; that he had seen Mr. Hoselton write, and knew his signature; that during the time he was cashier Hoselton drew on Margrave's account from 25 to 50 checks per month; that he had known Hoselton between 15 and 20 years, and to his knowledge Hoselton had been employed by Margrave about 20 years, and is now so employed."

From appellant's abstract we quote as follows: "Thereupon the plaintiff offered in evidence the deposition of W. A. Margrave, who testified: That during the year 1904, E. Hoselton was in his employ with authority to draw checks upon his account. Sometimes he drew as high as $3,000 a month. That he was acquainted with the signature of Mr. Hoselton, and did not believe it was his genuine signature to Exhibit A. Q. Do you furnish Mr. Hoselton with check books for drawing checks upon your account? A. Yes, sir. Q. In the form of checks shown in Exhibits E, F, G ,H, and I? A. Yes, sir; I have those printed. Mr. Hoselton constantly carried such check book with him, and was not in Kansas City on August 10th. He was with me at St. Joe, and came back the same day.' Witness further testified: That he was 60 years old, and is a farmer and stock raiser more than anything else; lived on a farm near Preston. That he had known E. Hoselton not less than 26 years. That during all that time Mr. Hoselton had been and now is in his employ. That Exhibits E, F, G, H, and I were checks

drawn by E. Hoselton upon his account in the Farmers' State Bank. That he had frequently seen Mr. Hoselton write and sign his name, and knew his signature. 'Q. Have you carefully compared the signature upon the exhibits just mentioned with the signature of the check marked Exhibit A? A. Yes, sir. Q. I will ask you whether in your judgment, from the comparison you have made and from your knowledge of the handwriting of Mr. Hoselton, the signature of E. Hoselton attached to the check, Exhibit A, is the genuine signature of E. Hoselton. A. No, sir, I think it is not.' That the check, Exhibit A, had not been paid by him to the Farmers' State Bank, nor to Mr. Greenwald, nor had that bank been reimbursed by him for the money paid out upon the check, nor had the check been charged to his account. That the handwriting of the name 'L. C. Gibson' on the back of the check and the handwriting of the body of the check was not that of any person known to him."

After laying ample foundation in the usual manner to enable respondent Greenwald to testify from personal knowledge and as a handwriting expert, he was very properly permitted to state that he was personally acquainted with E. Hoselton and had seen him write; as cashier of the Falls City State Bank he had cashed numerous checks signed by Mr. Hoselton, and knew his signature; that he had compared the signatures upon the checks of E. Hoselton offered in evidence for comparison with the purported signature of E. Hoselton on the check, Exhibit A, and that the signatures of E. Hoselton to the five instruments referred to are his genuine signatures, and that there is a material difference in such signatures from the one in litigation; and that in his opinion Exhibit A was never signed by Hoselton. While Mr. Hoselton is neither a party to the action nor, strictly speaking, an interested witness, the existence of such a relation may be assumed without justifying the application of the doctrine that the uncorroborated testimony of a party, or that of an interested witness, is not conclusive upon the jury, but may be disregarded, if deemed unworthy of belief. Although the abstract contains cumulative evidence bearing upon the question of forgery that has been considered unnecessary to quote, enough appears in this opinion to show that he was

corroborated by numerous witnesses entitled at least to some credence, and the fact that the check was forged stands proved by an unchallenged record. Had appellant's request been granted, and a verdict returned contrary to the undisputed testimony and all the probative circumstances, it would have been the duty of the court to set aside such verdict; and the question was therefore properly withheld from the jury. Longley v. Daly, 1 S. D. 257, 46 N. W. 247; Fromherz v. Yankton Fire Ins. Co., 7 S. D. 187, 63 N. W. 784; McKeever v. Homestake Mining Co., 10 S. D. 599, 74 N. W. 1053; Fisher et al. v. Porter et al., 11 S. D. 311, 77 N. W. 112; Howie v. Bratrud, 14 S. D. 648, 86 N. W. 747; Lockhart v. Hewitt, 18 S. D. 522, 101 N. W. 355. There being abundant undisputed testimony to establish the forgery of the check in controversy, without any reference to the Hoselton checks subsequently written and introduced in evidence for the purpose of comparison, the overruling of counsel's objection to their admission, even though it should have been sustained, would not necessitate a reversal. It may also be conceded that, where a signature is in dispute, a writing subsequently prepared for the special purpose of comparison is inadmissible; but the genuineness of the signature on the check made the basis of this action was not even suggested by any witness at the trial, and the checks under consideration appear to have been made in the usual course of business. The fact that a signature offered in evidence as a standard for comparison was made since the time of the signature in dispute may, under certain circumstances, be considered as affecting its credibility; but such fact will not justify a denial of its use, unless it is shown that it was manufactured since the controversy arose, for the purpose of comparison, by one having a motive to fabricate. University of Illinois v. Spaulding, 71 N. H. 163, 51 Atl. 731, 62 L. R. A. 817; Singer Manufacturing Co. v. McFarland et al., 53 Iowa, 540, 5 N. W. 739; Tucker v. Hyatt, 144 Ind. 635, 41 N. E. 1047, 43 N. E. 872; 6 Enc. of Ev. 422.

Having found no error in the admission of evidence, nor in the refusal of the court to let the jury determine whether the check was forged, we proceed to a more difficult question, the determination of which is conclusive as to the rights of the parties. Upon the

theory that the bank at its peril was bound to know the signature of its customer, it is maintained by counsel for appellant that this case comes clearly within a well-recognized exception to the general rule that money paid under a mistake of fact may be recovered back, and some of the decisions cited in his brief seem to support such contention. In 2 Daniel on Negotiable Instruments, commencing at section 1655, the cases upon which appellant relies are reviewed with characteristic ability by the author, who disaffirms the doctrine that a bank cannot recover back money paid on a forged check, and the prevailing rule is stated thus: "In the absence of actual fault or negligence on the part of the drawee bank, its constructive fault in not knowing the signature of the drawer, and detecting the forgery, will not preclude its recovering back the amount, or recalling its certificate, as against one who has received the money or taken the check with knowledge of the forgery, or who took the check under circumstances of suspicion without proper precaution, or whose conduct has been such as to mislead the bank, or to induce payment or certification of the check, without the usual scrutiny or precautions against mistake or fraud." The headnote, fully sustained by the opinion, in National Bank v. Bangs, 106 Mass. 441, is as follows: "The responsibility of the drawee, who pays a forged check, for the genuineness of the drawer's signature, is absolute only in favor of one who has not by his own fault or negligence contributed to the success of the fraud or to mislead the drawee; and if the payee took the check, drawn payable to his order, from a stranger, or other third person, without inquiry, although in good faith and for value, and gave it currency and credit by indorsing it before receiving payment of it, the drawee may recover back the money paid." The decision consists of a thoroughly comprehensive exposition of the subject, to the effect that any fault, negligence, or mistake on the part of the person presenting a forged check, which tends to reasonably lessen the efforts of bank officials to ascertain whether such check really contains the signature of a depositor, is sufficient to render it inequitable for him to retain the money, which may be recovered back; and in the course of the discussion the court say: "We are aware of no case in which the principle that the drawee is bound

to know the signature of the drawer of a bill or check, which he undertakes to pay, has been held to be decisive in favor of a payee of a forged bill or check to which he has himself given credit by his indorsement."

With reference to the proposition that a bank should not recover back money paid on a forged check, because the holder receiving payment is likely to be prejudiced thereby in the enforcement of his remedies against other parties, it is declared in the case of Ellis & Morton v. Ohio Life Insurance Company, 4 Ohio St., at page 660, 64 Am. Dec. 610, that no such presumption should prevail, and in support of the view the court, quoting an eminent author, say: "And such is not only the opinion of Mr. Chitty, but he thinks it the fair result of the modern English cases. After alluding to the grounds of the contrary opinion, he says: 'But, on the other hand, it may be observed that the holder who obtained payment cannot be considered as having altogether shown sufficient circumspection. He might, before he discounted or received the instrument in payment, have made more inquiries as to the signatures and genuineness of the instrument, even of the drawer or indorsers themselves, and, if he thought fit to rely on the bare representation of the party from whom he took it, there is no reason that he should profit by the accidental payment, when the loss had already attached upon himself; and why should he be allowed to retain the money, when, by an immediate notice of the forgery, he is enabled to proceed against all other parties precisely the same as if the payment had not been made, and consequently the payment to him has not in th least altered his situation, or occasioned any delay or prejudice? It seems that, of late, upon questions of this nature, these latter considerations have influenced the court in determining whether or not the the money shall be recoverable back.'" In 5 Cyc. 546, the true rule by which to determine the rights of the parties in an action like the one before us is stated thus: "When payment is made to the holder of paper who has come into possession of it without any fault on his part, and his situation would be rendered worse if compelled to refund than it was before receiving payment, the money cannot be recovered from him. If, however, he has been negligent in any regard, he cannot

retain the money. To justify him in doing so the bank alone must have been negligent. If neither party has been negligent, or both have been, then the bank can recover the money."

Conformable to the foregoing rule we quote from People's Bank v. Franklin Bank, 12 S. W. 716, 6 L. R. A. 724, as follows: "Notwithstanding some conflict of authority upon the subject, a careful investigation of the adjudged cases and the text-book leads us to the conclusion that the bank can recover of a party to whom payment is made on a forged check, indorsed by the party to whom paid, where the party to whom paid has been guilty of negligence in receiving and indorsing the check; for, notwithstanding the negligence to some degree that the paying bank has been guilty of in paying the forged check without detecting the forgery of its de-depositors signature, it often happens or may happen, that the party to whom payment is made has been guilty of the first negligence in purchasing and indorsing the forged paper. The bank upon whom the check is drawn, in the practical administration of banking business, may well be lulled to a less careful scrutiny of its depositor's signature of a check, where the same is indorsed by another bank with which it is in correspondence or interchange of business, than it would exercise in accepting and paying the same check, not so indorsed, to a stranger." Discussing a case similar to this upon principle, but where the equities were conceded to be equal, the New York court say: "No doubt the parties were equally innocent in a moral point of view. The conduct of both was bona fide, and the negligence, or rather misfortune, of both the same. It was the duty, or, more properly, a measure of prudence, in each to have inquired into the forgery, which both omitted. But this raises no preference at law or equity in favor of the defendants, but against them. They have obtained the plaintiff's money without consideration; not as a gift, but under a mistake. For the very reason that the parties were equally innocent, the plaintiffs have the right to recover." Canal v. Bank of Albany, 1 Hill (N. Y.) 287.

Bearing in mind the authoritative rule of action applied in the cases that have been thus noticed with approval, it becomes necessary to give the evidence most studious. examination, as a complete understanding of the facts and circumstances is vitally essential to

a proper determination of the appeal. Now appellant, who was engaged in the saloon business, testified in substance that as security for the loan of $50 he received the check from a comparative stranger, and, while he didn't know his name or inquire concerning his business, he supposed him to be a gambler, as he was around with that class of people. Nor did he know or make any inquiry as to E. Hoselton, the purported maker of the check, the body of which was apparently written by the same person who wrote the name "L. C. Gibson" on the back thereof. If it be permissible, the inference that this person ever claimed to be L. C. Gibson, or was so known and recognized anywhere, arises from the fact that such name was written on the back of the check when appellant received and indorsed the same before depositing it for collection through his agent, the State Banking & Trust Company of Sioux Falls. Nor did the cashier of such bank know L. C. Gibson or his signature, and while he acted as a mere collection agent for appellant, he indorsed the check "Pay any bank or banker, or order (all previous endorsements guaranteed). State Banking & Trust Co., Sioux Falls, S. D., F. H. Hollister, Cashier." This check, thus deposited for collection some time after the 10th day of August, 1904, reached the Farmers' State Bank of Preston in due course of mail, and shortly after the remittance therefor, made on the 15th day of that month was received by the State Banking & Trust Company, it received the notice that the Hoselton check was a forgery. The check was dated August 10th, and appellant testified that he received it within a few days of that time and within a day or two afterward left the same at the bank for collection, that between that time and when he received a certificate of deposit for the amount from the State Banking & Trust Company he was away from Sioux Falls about a week, and that after receiving such certificate he kept it in his safe for some days before sending it on to Gibson, who had in the meantime fully paid the $50 loan. It will thus be seen that the State Banking & Trust Company, as the agent of appellant, was fully advised of the forgery several days before the certificate of deposit was forwarded to Gibson, and for the purposes of this case it may be presumed that the agent bank promptly notified appellant, for whom it was acting

in the premises. It was not shown at the trial that this certificate of deposit, received by appellant from the State Banking & Trust Company, has ever been paid, and the evidence, viewed in the light of all the circumstances, sustains the inference that after appellant had received the $50, and before the certificate was forwarded to Gibson, he had actual notice that the check was a forgery. Section 1687, Rev. Civ. Code, is as follows: "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other."

Moreover, the indorsement of the State Banking & Trust Company on the back of such check was of a character most likely to mislead, and the cashier of the Farmers' State Bank of Preston, who was not then very familiar with the signature of E. Hoselton, was very properly allowed to testify that he measurably relied upon such indorsement and that of G. A. Ford, supposing that the check was going through the regular channel and had reached him in the ordinary course of the banking business. The maxim that, "Where one of two innocent persons must suffer by the act of the third, he by whose negligence it happened must be the sufferer," was adopted as section 2442 of our Revised Civil Code, and no well-reasoned authority can ever militate against a precept so firmly grounded upon the principles of natural justice. Treating this as a case where money was paid by one party to another through a mutual mistake of fact in respect to which both were equally bound to inquire, the loss must be sustained by appellant as the party to the fault or negligence of whom it is plainly traceable.

From a careful examination of the entire record, which contains no errors of law, either in the admission of evidence or otherwise, we are satisfied that appellant is legally liable to respondent for the amount of the check; and the judgment appealed from is affirmed.

CORSON, J., took no part in this decision.